Englehart *v.* Cassatt et al., Appellants.

Argued May 26, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Edwin A. Lucas,* with him *Dickson, Beitler & Mc-
Couch* and *Percy Allen Rose,* for appellants.—The law
is settled that where a man is injured by delay in de-
livery of goods, it is his duty, if the goods are obtainable
in the open market, to go out and purchase other goods
to take the place of those contracted for, and his dam-
ages will be limited to the excess of the price he is com-
pelled to pay for the new goods over the contract price:
Blakeslee Mfg. Co. v. Hilton, 5 Pa. Superior Ct. 184;
Breitweiser Lumber Co. v. Crick, 55 Pa. Superior Ct.
72; Rockwell Mfg. Co. v. Cambridge Springs Co., 191
Pa. 386; Huntington, etc., R. R. v. English, 86 Pa. 247;
Barbour v. Sproul, 239 Pa. 171; Gorman v. Littlefield,
229 U. S. 19; Com. v. Nixon, 94 Pa. Superior Ct. 333.

Plaintiff waived any claim for delay by accepting the
shares when finally delivered: McKay & Co. v. Mc-
Kenna, 173 Pa. 581; Hoover Body Co. v. Pendleton, 95
Pa. Superior Ct. 97; Anspach & Stanton v. Heft, 57
Pa. 326.

*Philip N. Shettig,* with him *F. J. Hartmann* and *A. A.
Nelson,* for appellee.—Plaintiff suffered damages: Iron
Trade Products Co. v. Wilkoff Co., 272 Pa. 172; Burton

v. Miller, 227 Pa. 143; Hauptman v. Pa. Working Home for Blind Men, 258 Pa. 427.

The failure to deliver in these circumstances was not a mere breach of contract, but a conversion of plaintiff's property by his agent: Gervis v. Kay, 294 Pa. 518.

Under the circumstances the defendants would not have been permitted, at the trial, to assert a defense of which they had given no notice in their affidavit of defense: Ruth-Hastings Glass Co. v. Slattery, 266 Pa. 288; Marshall v. Troncelliti, 96 Pa. Superior Ct. 57; Zoller v. Ins. Co., 272 Pa. 386; Linck v. Plankenhorn, 286 Pa. 319; Weiskircher v. Connelly, 256 Pa. 387.

Plaintiff did not waive claim for delay by accepting the shares when finally delivered.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1931:

The relevant facts in this case are as follows: On October 22, 1929, plaintiff, through his local bank, authorized defendants to purchase for him 200 shares of the stock of the Vanadium Corporation of America, at $77 per share. On the same day, they purchased it at that price, and so notified his bank, which thereupon advised them that if they would deliver the certificates to a specified New York bank, they would be paid the purchase price and the commission due to them for their services. On October 25, 1929, an employee of defendants mistakenly delivered to the New York bank certificates of stock of the Vanadium Alloys Steel Company, an entirely different corporation, and received the foregoing purchase price and commission. On the New York bank communicating with plaintiff, it was advised of the mistake and at once notified defendants thereof, who admitted their error, but, from some cause not disclosed by the evidence, did not deliver the right certificates until November 12, 1929, though daily thereafter, either in writing or by telephone, they were urged by the New York bank to do so. No objection was made to the receipt of the right certificates at the time they were de-

livered, nor were defendants told, either then or at any other time, that they would be held liable for their delay in delivery.

At the trial, plaintiff offered no proof of actual loss by reason of the delay, but contented himself with showing that the stock had steadily depreciated in value from the time of its purchase, until, on the day of the delivery, its market price was $51 per share. He claimed to recover this difference with interest, and also $150, a dividend on the stock received by defendants during the period of plaintiff's ownership, and interest on that sum also. This latter claim must have been based on an assertion of ownership by plaintiff from the time of the purchase of the stock by defendants, though the certificates had not been delivered to him. Under the charge of the court, the verdict was for the aggregate of the foregoing items, and, judgment being entered thereon, this appeal was taken by defendants.

At the bar of this court, plaintiff's counsel, in answer to a question by one of the Justices, admitted that the recovery was greater than it should have been. Assuming for the moment that plaintiff's damages were to be measured by the difference between the market values of the stock, it was error to permit him to recover the difference in those values between the date of purchase and the date of delivery. At most, he would have been entitled to the difference in the market values between the date when the certificates should have been delivered and the date they actually were delivered. On a rapidly falling market, as this was, the error was important.

On the other hand, defendants admit their liability for the $150 dividend, but claim it should be limited to that exact amount, without interest or costs, because, shortly after the suit was brought, they sent plaintiff a check for the $150, which, however, he returned. This was an insufficient tender since it did not include the costs which had accrued, nor interest on the $150; and was ineffective also because defendants did not follow

up their tender by payment into court of the amount of the dividend with interest and costs: Cornell v. Green, 10 S. & R. 14; Berkheimer v. Geise, 82 Pa. 64, 67. Hence, it was insufficient to prevent the running of future interest and plaintiff was entitled to an instructed verdict for the $150 with interest.

It will be noticed, however, that we have before us a question of much greater importance, viz.: What is the measure of damages for a broker's erroneous failure to deliver paid-for shares of stock within a reasonable time (assuming there was such a failure), despite repeated demands by the customer for their delivery, repeated promises to make it, and repeated failures to comply with these promises. We give no heed to defendants' argument that the stress of the stock market at that time may have caused the delay. We know there was such a stress, but no one says it was the cause of the delay, and to assert such a possibility wholly overlooks the fact that defendants could as readily have delivered the right set of certificates at the early date, as they did the wrong ones.

It is not disputed that defendants were required to deliver them within a reasonable time, but what constituted a reasonable time was not shown, unless the delivery of the wrong certificates, three days after the purchase, would fix that three days as such reasonable time. Assuming that it would, two questions are presented for consideration: (1) Was plaintiff entitled to recover anything, in view of the fact that he never gave defendants notice of an intention to hold them liable for the delay in delivery, but unqualifiedly accepted the right certificates of stock, when delivered in compliance with his repeated requests therefor, without objection or notice of any kind? and (2) If he was, were his damages to be measured by his theoretical loss, because of the fall in the market price of the stock, as the court below held they were, or by his actual loss, of which no proof was given?

Upon the first of these points the decisions throughout the country are far from uniform, as clearly shown by the court below in its quotations of Williston on Sales, 2d edition, page 1264, paragraph 487; 2 Sedgwick on Damages, 9th edition, page 1538, paragraph 735c, and 23 R. C. L., page 1444, paragraph 268, and by the cases cited in these several books. In this State, the weight of authority seems to be that an unqualified acceptance, in cases like the present, results in a waiver of the right to claim damages for the delay, but, in view of our conclusion on the second of the above questions, we shall not cite or review those authorities, nor definitely decide the point.

Upon that second question, plaintiff and the court below refer us only to Chapman v. Fowler, 116 N. Y. Suppl. 962, 132 N. Y. App. Div. 250. In that case, which was not decided by a court of last resort, and, so far as we are aware, has never been cited in any later opinion in New York or elsewhere, though forty years have elapsed since it was rendered, the facts were in many respects like the present. Plaintiff claimed to recover the difference between the market price on the day delivery should have been made, and that on the day it was made. The trial judge decided that the acceptance of the delayed delivery, without protest, estopped plaintiff from recovering anything. The appellate division overruled this, and said that "He had a right of action for damages for breach of contract. He did not waive that right, and he did nothing to estop himself from asserting that right." It therefore awarded a new trial, but it did not state what was to be the measure of damages when the new trial was had, nor does its citation of earlier authorities throw any light on this question.

Aside from that case, neither the court below nor plaintiff refers us to any authority justifying a recovery upon the basis allowed here, nor have we found any; we are, therefore, at liberty to decide the instant case upon principle. The damages, if there were any, must

necessarily be predicated upon the contention that if the stock had been delivered at the proper time, plaintiff could have utilized it before the time of actual delivery, so as to be of financial benefit to himself. We say "financial benefit" because no other standard is permitted in actions of contract, express or implied. If plaintiff could have so utilized the stock, the burden was on him to show the fact. This he did not do. On the contrary, he proved the reverse, for the market price steadily fell from the day of the purchase to the day of actual delivery. In this State, the measure of damages for a failure or refusal to deliver always has been "such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, or such as might, according to the ordinary course of things, be expected to follow its violation": Billmeyer v. Wagner, 91 Pa. 92; Hutchinson v. Snider, 137 Pa. 1. Under this rule, if plaintiff had shown convincingly that, if he had had the certificates, he could and would have sold the stock at a profit, or that he would have sold it at a loss, in order to avoid a possibly greater one, the difference between the market values at the time when the certificates should have been delivered and the time when they were, would have been important and might have measured plaintiff's damages. In this case, however, it is admitted plaintiff could not have sold at a profit between those dates, and it cannot be assumed, without proof, of which there is none, that he would have sold in order to minimize his possible loss. The damages which plaintiff recovered were not, therefore, within the rule of the above cases.

Defendants go a long step further, however, and assert that damages could not legally have been allowed on the basis stated, since plaintiff was the owner of the stock from the time of its purchase, though the certificates had not been delivered to him but only to his broker, and hence he could have sold it at any time after its purchase. In view of what we have said above,

we do not deem it necessary to consider this point at length. It is doubtless true that, where a broker purchases stock on the order of a customer and so notifies the latter, the title to the stock passes to him, though the certificates have not been delivered: Barbour v. Sproul, 239 Pa. 171; Gorman v. Littlefield, 229 U. S. 19; Com. v. Nixon, 94 Pa. Superior Ct. 533; Eddy v. Schiebel, 112 Conn. 248. This being so, plaintiff had the right to sell the stock purchased for him by defendants, if he was willing to take the risk of delivery by the latter, in time to enable him, plaintiff, to make a proper delivery to his vendee. It is at least doubtful whether he was required to take that risk for the benefit of defendants, who alone were responsible for the delay in making due delivery; but we leave this question open for consideration when it becomes necessary to decide it.

We have not overlooked plaintiff's contention that defendants cannot now be permitted to challenge his method of measuring his damages, because they did not do so in their affidavit of defense. He bases this contention on section 16 of the Practice Act of May 14, 1915, P. L. 483, 486, which says: "Neither party shall be permitted at the trial to make any defense which is not set forth in the affidavit of defense, or plaintiff's reply, as the case may be, except as provided in section seven and thirteen." These sections refer to affidavits on questions of fact only. The only provision in the statute for raising questions of law is section 20, establishing proceedings in lieu of the old-time demurrer, and plaintiff does not contend that the question of the measure of damages in this case was or could have thus been raised. Section 16 must be construed, therefore, as if the words "on issues of fact" were inserted after the words "make any defense," and, as so construed, it accords with section 6, which says that "every allegation of fact in the plaintiff's statement of claim......if not denied specifically......shall

be taken to be admitted" and makes of the statute an harmonious whole, as no other construction could do. From time immemorial the purpose of responsive pleadings has been to raise issues of fact only, and statutes will not be so construed as to change this fundamental rule, unless no other interpretation is reasonably possible (Beloit Iron Works v. Lockhart, 294 Pa. 376), which is not the case here.

The judgment of the court below is reversed and a venire facias de novo is awarded.