385 So.2d 98 (1980)
TUTTLE/WHITE CONSTRUCTORS, INC., Appellant,
v.
MONTGOMERY ELEVATOR COMPANY, Appellee.
No. 78-1611/T4-163.
District Court of Appeal of Florida, Fifth District.
May 28, 1980.
Rehearing Denied July 7, 1980.
Jon M. Wilson of Van Den Berg, Gay & Burke, P.A., Orlando, for appellant.
Robert W. Smith of Miller & Cooper, P.A., Orlando, for appellee.
COBB, Judge.
The appellee, Montgomery Elevator Co., as subcontractor, sued Tuttle/White, the general contractor constructing a highrise building, alleging that it was owed a balance of $15,945.00 for elevators installed in the building. Tuttle/White defended and counterclaimed on the basis that the installation was late, allegedly resulting in additional interest incurred by the owner on the construction loan and other damages, for which Tuttle/White had been forced to settle *99 with the owner, and for which it sought a set-off against Montgomery.
The case proceeded to a non-jury trial. After the close of Tuttle/White's defense to Montgomery Elevator Co.'s claim, Montgomery moved to strike all of Tuttle/White's evidence relating to damages on the ground that the latter had failed to introduce independent evidence as to the reasonableness of said damages, relying on the case of Charlotte Harbor and Northern Railway Co. v. Burwell, 56 Fla. 217, 48 So. 213 (1908). The trial court granted the motion. Tuttle/White immediately moved to reopen its case to present further damage evidence, and this was denied. Montgomery Elevator Co. then presented rebuttal evidence and rested its case. At this point in the trial, Tuttle/White requested that it be permitted to proceed with evidence as to its counterclaim, which presumably would have included proof of damages attendant thereto. This request also was denied by the trial court.
After closing arguments, the court rendered judgment for Montgomery Elevator Co. for the full amount claimed, plus interest and costs. Tuttle/White's counterclaim and asserted set-off were denied.
The subcontract between Tuttle/White and Montgomery required a completion date of May 15, 1974, for installation of the elevators, and expressly conditioned payment to the subcontractor on completion of the work as specified in the contract. The state elevator inspector first inspected the elevators on June 4, 1974. Final inspection and approval apparently took place sometime thereafter in June or July. Evidence was introduced at trial to the effect that the failure to complete the elevators by either the original contract date, or the extended date of May 31, caused a delay for the owner of the closing date for the permanent loan, which carried a substantially lower interest rate than the construction loan. Consequently, the owner withheld final payment due Tuttle/White, and they ultimately agreed to a settlement for the construction delay in the amount of $20,541.98. The items included in the settlement (interest differential, attorneys' fees, phone charges) and the settlement negotiations were testified to at trial by a representative of the owner as part of the set-off defense by Tuttle/White to Montgomery's case in chief.
The appellant, Tuttle/White, moved for dismissal of Montgomery's claim at the close of plaintiff's case, contending that no prima facie case for recovery had been established, because the proof established untimely performance by Montgomery. Canada Dry Bottling Co. v. K.M.A., Inc., 349 So.2d 846 (Fla.2d DCA 1977). We believe there was sufficient evidence before the trial court for denial of this motion, particularly since the subcontract between the parties provided for the contingency of late performance in the following proviso in ¶ SECOND (f):
Should any delay on the part of the Subcontractor in the prosecution or completion of the work, due allowance being made for the contingencies hereinafter provided for, cause loss or damage to Owner for which Contractor may be liable, or cause any loss or damage to Contractor due to failure to complete the entire building or structure by the date agreed upon between Owner and Subcontractor, Subcontractor shall be liable to Contractor therefor.
We interpret this paragraph of the contract as an agreement by the parties that in the event of late but total completion, Montgomery could recover the contract price for the work subject to any deductions for damages caused by the late completion.
The striking of Tuttle/White's damage evidence presented in support of its affirmative defense of its set-off, however, was error. The Charlotte Harbor case stands for the proposition that a promise to pay the reasonable value of services or materials is implied when there is no express agreement as to the compensation to be paid, and the burden of proving reasonableness is on the claimant. Here, we are not dealing with the reasonable value of goods or services furnished pursuant to an implied contract, but rather with damages caused *100 by Montgomery's breach of an express contractual provision. The measure of such damages is the loss naturally and proximately resulting from the breach, or such as may reasonably be supposed to have been within the contemplation of both parties at the time they made the contract as the probable and natural result of the breach of it. See 9A Fla.Jur., Damages, § 33 (1972), and cases cited therein.
As to the burden of showing the reasonableness vel non of the damages actually resulting from any breach by Montgomery, we believe the general rule to be that the non-defaulting party must show actual expenditures occasioned by the breach, and then the defaulting party may present evidence to prove waste, extravagance and lack of good faith. R.K. Cooper Builders, Inc. v. Free-Lock Ceilings, Inc., 219 So.2d 87 (Fla.3d DCA 1969). The burden to show the unreasonableness of actual expenditures occasioned by the breach is on the defaulting party.
Another finding implied by comments of the trial court at the trial was that the evidence did not apportion the damages among other subcontractors who may have contributed to the delay of the project. The uncontroverted evidence before the trial court was that delay was occasioned by Montgomery; there was equivocal evidence that other subcontractors may have contributed to this delay, but the final judgment did not make that finding. Indeed, in trial comments referring to delay damages caused by other subcontractors, the trial court pointedly qualified the word "damages" with the appellation "if any." In this regard, we believe the law to be succinctly set forth in the 5 Corbin on Contracts Section 999 (1964), as follows:
In all cases involving problems of causation and responsibility for harm, a good many factors have united in producing the result; the plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. Must the defendant pay damages equivalent to the total harm suffered? Generally the answer is Yes, even though there were contributing factors other than his own conduct. Must the plaintiff show the proportionate part played by the defendant's breach of contract among all the contributing factors causing the injury, and must his loss be segregated proportionately? To these questions the answer is generally No. In order to establish liability the plaintiff must show that the defendant's breach was a "substantial factor" in causing the injury.
Krauss v. Greenberg, 137 F.2d 569 (3d Cir.1943), cert. den., 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477 (1943); Southern National Bank v. Crateo, Inc., 458 F.2d 688 (5th Cir.1972); Eazor Express, Inc. v. International Brotherhood of Teamsters, 520 F.2d 951 (3d Cir.1975), cert. den., 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976); Vesper Construction Co. v. Rain For Rent, Inc., 602 F.2d 238 (10th Cir.1979).
Accordingly, we find that the trial court erred in striking the damage evidence of Tuttle/White. The judgment entered herein is reversed, and this cause is remanded for a new trial on the issue of damages suffered by Tuttle/White in respect to its affirmative defense of set-off against the claim of Montgomery; should those damages exceed the claim, then the trial court should award the difference to Tuttle/White on its counterclaim.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., J., concurs.
MILLER, ROBERT P., Associate Judge, dissents with opinion.
MILLER, ROBERT P., Associate Judge, dissents.
I agree with the majority opinion that Charlotte Harbor and Northern Railway Co. v. Burwell, 56 Fla. 217, 48 So. 213 (1908) is not controlling on the question of proof of damages claimed by way of set-off or counterclaim in this cause.
However, that point involves solely the amount of damages or expenses of the appellant, and in light of the trial judge's *101 following finding regarding inadequate evidence on causation the question of amount becomes moot. That finding was as follows:
The Court also would point out that there was more than one subcontractor whose job was not completed. There is no evidence whatsoever for this record to try to apportion the damages, if any, occasioned by the other contractors by reason of his delay. So I just want to put it in the record, as I view it, the evidence in this case.
The evidence is conflicting as to the delays caused by other subcontractors.
It was certainly within the trial court's province to determine what part of appellant's delay and, therefore, what part of appellant's damages, was substantially caused by the appellee. The trial judge found that the delay was caused by several subcontractors and further that there was an absence of such evidence as to what part of the delay was caused by appellee. In the absence of such evidence the court had no alternative but to find for appellee on the question of set-off or damages of appellant. In Travelers Indemnity Co. v. Peacock Const. Co., 423 F.2d 1153 (5th Cir.1970), the trial judge was faced with the identical question and denied such damages. In that case, the Fifth Circuit Court of Appeals, affirming the trial judge while relying on Florida law, said:
The second item is for damages due to delay. Peacock contends that since the Trial Judge found that some delay in the completion date of the entire project was caused by Murray's breach, he erred in not allowing damages for extra supervisory personnel needed to make up time, the reasonable rental value of equipment which could not be used on the site until Murray's contract had been fulfilled, loss of efficiency due to delay, and overtime payments. The Trial Court concluded that Murray's contributed to the delay in completing the project, and that as a result of the delay in completing the project, Peacock suffered damage in the manners claimed. But the Judge went on to state that "because of the many contributing factors shown for the delay * * * the Court could not ascertain the amount of damages due Peacock from Murray's other than through the process of mere speculation or conjecture." On this complex record this finding is not clearly erroneous. F.R.Civ.P. 52(a). And because `before damages may be awarded there must be evidence authorizing or justifying the award of a definite amount, which cannot be predicated upon pure speculation,' Kennedy and Ely Ins. Inc. v. American Employers' Insurance Co., Fla.Ct.App., 179 So.2d 248, 249, see also Nello L. Teer Co. v. Hollywood Golf Estates, Inc., 5 Cir., 1963, 324 F.2d 669, 672, cert. denied, 377 U.S. 909, 84 S.Ct. 1169, 12 L.Ed.2d 178, the conclusion that no damages should be allowed is supportable. Traveler's Indemnity Co., supra at 1157.
We must remember that the judgment of the trial court reaches this Court clothed with a presumption in favor of its validity and if, on the pleadings and evidence before the trial court, there is any theory or principal of law that would support the trial court's judgment, this court is obliged to affirm that judgment. See Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962).
I would, therefore affirm the judgment below.