468 So.2d 272 (1985)
SHEARSON LOEB RHOADES, INC., Appellant,
v.
George Q. MEDLIN, Etc., Appellee.
No. 84-1101.
District Court of Appeal of Florida, Fourth District.
March 13, 1985.
*273 Richard E. Brodsky of Paul, Landy, Beiley & Harper, P.A., Miami, for appellant.
Glenn R. Mee and V.J. Voorheis, of Andrews, Voorheis, Lehrer & Baggett, Fort Lauderdale, for appellee.
HERSEY, Judge.
Medlin sued Shearson for damages occasioned by the latter's failure to effect timely transfer of stocks from Medlin's individual name to that of Medlin's trust. The trial court measured the damages by "the difference between the value at which [Medlin] wanted to sell the securities ... and the value of such shares at their respective dates of delivery," entering judgment of $131,300 for Medlin. The issue is whether the measure of damages applied by the trial court was appropriate. We think not and reverse.
There is some conflict in the testimony but, in summary, it was established that Medlin delivered the securities to Shearson on September 16, 1980, indicating his intention to sell them before the end of the year; that he was told he could not sell the stock while the certificates were in the process of being transferred; and that ordinarily the certificates should have been returned by September 30, 1980, but were in fact redelivered to him much later than that.
The value of the securities for the period in controversy reached a high on or about the dates Medlin allegedly intended to sell, thereafter declining, but not below the value on the date the certificates should have been redelivered to Medlin.
As a general rule, "[d]amages for a breach of contract should be measured as of the date of the breach... . Fluctuations in value after the breach do not affect the nonbreaching party's recovery." Grossman Holdings, Ltd. v. Hourihan, 414 So.2d 1037, 1040 (Fla. 1982) (citations omitted). See also Lake Region Paradise Island, Inc. v. Graviss, 335 So.2d 341 (Fla. 2d DCA), cert. dismissed, 338 So.2d 842 (Fla. 1976). While no Florida cases have been called to our attention dealing specifically with the measure of damages for delay in delivery of stock certificates, other jurisdictions have essentially applied the general rule in that situation. For instance, in Allen v. Blyth, 173 Wash. 409, 23 P.2d 567, 568 (1933), the court stated:
The measure of damages for delayed delivery of goods or corporate stock ... [is] the difference between the value when they should have been delivered and the value when they were actually delivered... .
See also Kaufman v. Diversified Industries, Inc., 460 F.2d 1331 (2d Cir.), cert. denied, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972); Englehart v. Cassatt, 305 Pa. 117, 157 A. 256 (1931). Recovery under this rule, however, is subject to a showing that the damages were "`such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, or such as might, according to the ordinary course of things, be expected to follow its violation.'" Englehart, 157 A. at 258 (citations omitted). See also Life Investors Insurance Co. of America v. Johnson, 422 So.2d 32 (Fla. 4th DCA 1982); Tuttle/White Constructors, Inc. v. Montgomery Elevator Co., 385 So.2d 98 (Fla. 5th DCA 1980); First National Insurance Agency, Inc. v. Leesburg Transfer & Storage, Inc., 139 So.2d 476 (Fla. 2d DCA 1962); Allen, 23 P.2d at 568.
A showing of entitlement to damages under the general rule is accomplished by the plaintiff demonstrating that, had he possessed the shares, he would have sold them during the interim between the date of breach and the actual date of delivery. Otherwise, he would be no worse off because of the delay. Kaufman, 460 F.2d at 1331; Englehart, 157 A. at 256.
*274 In the instant case, Medlin made the requisite showing to entitle him to damages pursuant to the general rule. He testified that at the time he delivered the stock he advised Shearson of his intent to sell prior to the end of 1980. An agent of Shearson admitted that Medlin told her of this intent but she could not be certain whether he first mentioned it at the time of delivery of the stocks to her or at a later date. Medlin thus presented sufficient evidence (as to all but one of the stocks, which was returned to him prior to the end of 1980) to allow a finding that his damages should be measured as the difference between the value of the stocks at the time of breach and their value when they were actually delivered.
However, as previously indicated, since applying this measure of damages would result in no recovery, Medlin successfully argued in the trial court and argues here that the facts of this case justify a departure from the general rule. His position is, in essence, that the trial court correctly measured his damages as the difference between the stocks' values at the time he wanted to sell in November 1980 and their values at the time they were returned to him, since this is the only way he could be placed in "as advantageous a position as he would have occupied had his contract not been broken." Popwell v. Abel, 226 So.2d 418, 422 (Fla. 4th DCA 1969). This position might have some merit had some evidence been presented that he communicated to Shearson at the time of delivery of the stocks an intent to sell on a specific date or at a specific price. However, Medlin himself testified that he did not decide upon the specific time or price at which he wished to sell until November 1980  more than one month after the breach by Shearson at approximately the end of September  and he never told Shearson personnel that he wanted to sell at any particular time, just that he wanted to sell by the end of the year. Under the circumstances, the measure of damages imposed by the trial court cannot be said to be such as would "naturally and proximately [result] from the breach, or such as may reasonably be supposed to have been within the contemplation of both parties at the time they made the contract... ." Tuttle/White Constructors, 385 So.2d at 100. Medlin's situation is similar to that described in Lake Region, 335 So.2d at 341, where the plaintiff contended his damages should be measured as of the time of trial. In finding the time of breach to be the proper time for determining the amount of damages, the appellate court noted:
It isn't unfair to deny audience to a plaintiff who would, if the property increased in value, claim entitlement to the better position now, the time of trial, on the grounds that that's where he'd be had the vendor performed then, the time of the breach. Whether he would not have "sold off" is too speculative and selfserving to be a viable criterion; and, certainly, if the property decreased in value, he'd be claiming damages as of the time of the breach. The rule is sound, fair and practical. Exceptions to it are not applicable under the facts here.
Id. at 342-43 (emphasis original) (footnote omitted). Medlin is similarly precluded from measuring his damages as of the time he testified he would have sold where his secret intent to sell at a particular time or at a particular price was not made known until well after the breach by Shearson. Medlin's contention that he would have sold within the time period prior to return of the shares to him, without any showing of an intent to sell on a specific date, does nothing more than entitle him to damages measured as of the date of the breach.
We therefore reverse and remand for entry of an appropriate final judgment.
REVERSED and REMANDED.
DELL and WALDEN, JJ., concur.