808 So.2d 1278 (2002)
MNEMONICS, INC., Appellant,
v.
MAX DAVIS ASSOCIATES, INC., et al., Appellee.
No. 5D00-3623.
District Court of Appeal of Florida, Fifth District.
March 8, 2002.
*1279 William H. Cantwell, II and Michael R. Riemenschneider, of O'Brien Riemenschneider, P. A., Melbourne, for Appellant.
Kenneth C. Crooks of Dean, Mead, Melbourne, for Appellee.
ORFINGER, R.B., J.
Mnemonics, Inc. appeals a final judgment entered in its favor following a non-jury trial, finding that although it had proved its breach of contract claim against Max Davis Associates, Inc., it was not entitled to compensatory damages. Because we find competent, substantial evidence proved Mnemonics's claim for damages, we reverse that portion of the final judgment awarding Mnemonics only nominal damages.
Mnemonics, a government contractor, utilizes high volume copiers to produce materials needed in order to conduct its business. In the early summer of 1993, Mnemonics needed to replace and upgrade its existing copiers, which were producing about 52,000 copies per month. After considering proposals from several vendors, Mnemonics entered into three separate contracts with Max Davis over a two' day period: (1) a 60-month lease for a 9520 Savin Copier and a 6300 Risograph; (2) a separate maintenance agreement on the copiers; and (3) an equipment acquisition agreement wherein Max Davis agreed to repurchase the copiers from Mnemonics at the end of the lease term. The lease agreement was assigned to Copelco Credit Corporation by Max Davis.
The Savin 9520 began experiencing problems shortly after it was installed. The problems included frequent document feeder jams, destruction of original documents, the inability to produce double-sided copies, and the failure to properly collate copies. As a result, the copier required repeated service calls, and while waiting for a technician to arrive (a period of up to two days on some occasions), the copier was inoperable. Because of these problems, Mnemonics frequently had to complete its copying on other machines or utilize outside copying services.
In September 1994, representatives of Mnemonics met with representatives of Max Davis to discuss the problems. Apparently, an agreement was reached to install a replacement copier, but for reasons not clear in the record, the replacement copier was never installed. Mnemonics informed Max Davis by letter that the lease agreement would be terminated on November 18, 1994, unless the replacement copier was delivered prior to that date. When the replacement copier was not forthcoming, Mnemonics terminated the lease as it said it would, and obtained a replacement copier from another vendor. After Mnemonics stopped making payments under the lease agreement, Copelco removed the copiers and sold them for $6,500.
Copelco then sued Mnemonics for the unpaid lease payments together with interest and attorney's fees. Mnemonics filed a third party complaint against Max Davis alleging a claim for breach of the maintenance agreement and asserting a claim for indemnification. Eventually, Copelco obtained a judgment against Mnemonics in the principal sum of $80,404.95 and a judgment *1280 for attorney's fees of $13,137.50.[1] Mnemonics paid Copelco the total sum of $102,775.32 in full satisfaction of the judgments.[2] After a non-jury trial on Mnemonics's claims against Max Davis, the trial court entered an amended final judgment finding that Max Davis had breached its maintenance agreement but that Mnemonics had failed to present sufficient evidence that supported it damage claims. The trial court also concluded that Mnemonics was not entitled to indemnification from Max Davis.
In reviewing the Mnemonics/Max Davis transaction, we view the lease agreement, maintenance agreement, and equipment acquisition agreement as one integrated document because they were executed by the same parties at or about the same time and concern the same transaction or subject matter. When an agreement between the parties consists of several instruments executed by them at or near the same time and concern the same transaction or subject matter, they are generally construed together as a single contract. See Quix Snaxx, Inc. v. Sorensen, 710 So.2d 152, 154 (Fla. 3d DCA 1998). Accordingly, we conclude that Mnemonics's agreement to lease the copiers was dependent upon Max Davis's agreement to maintain them in proper operation, a duty the trial court found Max Davis breached.[3] We believe it is clear that the maintenance agreement was intended to be part of the lease agreement regardless of any provisions in the lease agreement to the contrary.
Unchallenged on appeal is the trial judge's finding that Max Davis breached its contract with Mnemonics. As such, we look only to the damage award and the evidence related thereto. Mnemonics argues that it is entitled to recover the monies it paid to Copelco pursuant to the final judgment entered against it. Max Davis contends that Mnemonics failed to produce any evidence to support any award of damages on the breach of contract claim.
An award of damages for breach of contract is intended to place the injured party in the position he or she would have been in had the breach not occurred. Sharick v. S.E. Univ. of Health Sci., Inc., 780 So.2d 136 (Fla. 3d DCA 2000). Damages recoverable by a party injured by a breach of contract are those that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into. Scott v. Rolling Hills Place, Inc., 688 So.2d 937 (Fla. 5th DCA 1996).
Here, the evidence clearly demonstrated that Mnemonics entered into a contract with Max Davis to lease two copiers over a five-year period and that Max Davis agreed to service and maintain those copiers. After Max Davis failed to properly service the Savin 9520 copier, Mnemonics terminated the lease. As a result, Mnemonics was obligated to pay Copelco *1281 $102,775.32. When Max Davis assigned the copier lease to Copelco, it was reasonably foreseeable that Mnemonics would cease making payments under the lease if the copiers did not operate properly and were not maintained, as required. It is not necessary to prove that the parties contemplated the precise injuries that occurred so long as the actual consequences could have reasonably been expected to flow from the breach. Natural Kitchen, Inc. v. Am. Transworld Corp., 449 So.2d 855 (Fla. 2d DCA 1984). The evidence unquestionably establishes that Mnemonics sustained damages of $102,775.32 due to Max Davis's breach of contract. The trial court erred in concluding that Mnemonics failed to put forth any evidence of damages. That conclusion is not supported by competent evidence. Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976). To the contrary, the evidence clearly shows Mnemonics's loss.
We find no merit in the other issues raised by Mnemonics. We affirm that portion of the final judgment finding Max Davis liable for breach of contract but reverse the trial court's judgment failing to award compensatory damages. On remand, the trial court shall enter judgment in favor of Mnemonics and against Max Davis in the amount of $102,775.32 plus accrued interest.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] Mnemonics could not assert a breach of warranty or breach of contract claim against Copelco because the lease agreement specifically waived all defenses to the payment of the lease against an assignee.
[2] Apparently, the sum paid by Mnemonics included taxable court costs and accrued interest on the judgment through the date of payment.
[3] Because the interpretation of a contract is a matter of law, we are not restricted by the trial court's conclusions construing the construction of the contracts. See Florida Power Corp. v. City of Casselberry, 793 So.2d 1174 (Fla. 5th DCA 2001). Accordingly, a decision construing the contracts is reviewed de novo. Inter-Active Servs., Inc. v. Heathrow Master Ass'n. Inc., 721 So.2d 433, 434 (Fla. 5th DCA 1998).