ORFINGER, J.
 

 Harold Lindon appeals an order granting Roy B. Dalton, Jr.’s motions for directed verdict and summary judgment, and Dalton Hotel Corporation’s (DHC) motions for directed verdict, judgment notwithstanding the verdict (JNOV), and summary judgment in a breach of contract and torts action. We affirm the summary judgment in favor of DHC and Dalton on Lindon’s tort claims, but reverse the court’s rulings on the motions for directed verdict and JNOV.
 

 This ease presents a dispute between Lindon, a minority shareholder in DHC; Dalton, the majority shareholder; and DHC. Dalton was the president, sole director, and chief executive officer of DHC, which was formed in April 1998. DHC was the sole general partner of Dalton Hotel, Ltd., a Florida limited partnership. Dalton, an attorney with no experience operating hotels, and Lindon, who had significant experience in the hospitality industry, entered into an understanding in 1998 to work together to develop a hotel in downtown Orlando. In October 1998, Lin-don, whose tasks included development and operations, identified a potential hotel site and moved the project forward with the parent company of Embassy Suites. Lindon negotiated with Embassy Suites on behalf of DHC, arranged and executed
 
 *302
 
 construction contracts and was involved in obtaining financing for the project. For these efforts, Lindon understood that he was to receive twenty-five percent of DHC’s stock.
 

 In February 1999, as agreed, Dalton transferred twenty-five percent of his 100 shares of stock in DHC to Lindon. Dalton transferred another five shares to his legal assistant. Dalton’s attorney prepared a shareholders’ agreement which the three shareholders and DHC executed in March 1999. Crucial to this case is the provision found in Article 11(a) of the agreement, which provides:
 

 It is provided that a
 
 stockholder currently employed by the Corporation,
 
 if any, who ceases to be an employee of the Corporation shall be deemed to have served an offer to sell all of his shares of stock in the Corporation on the date such employment ceases.
 

 (Emphasis added).
 
 [1]
 

 This provision became significant when Dalton informed Lindon that his employment with DHC would be terminated effective March 31, 2002, due to a significant downturn in business following the terrorist attacks of September 11, 2001. It is undisputed that Lindon was an employee of DHC when he was informed of his termination. However, a dispute existed as to when Lindon became a DHC employee, and, specifically, whether he was “currently employed” at the time that the shareholders’ agreement was executed in March 1999. The parties agree that Lin-don’s employment status is critical because if he was a DHC employee when he signed the agreement, he was obliged to sell his shares back to DHC at the agreed-upon price. But, if he was not employed by DHC when he signed the agreement, Article 11(a) of the agreement is inapplicable.
 

 Dalton informed Lindon that due to his termination, he was deemed to have served an offer to sell all of his stock in DHC back to the corporation pursuant to Article 11(a). Dalton provided Lindon with a notice of a special meeting of DHC’s shareholders to address the buyback of Lindon’s stock. Lindon objected to the meeting and again registered his objection at the special shareholders’ meeting. Notwithstanding, on May 21, 2002, Dalton notified Lindon by letter that DHC “had effectuated the purchase of [Lindon’s] shares for the sum of $0,” an amount equal to the adjusted book value of the shares.
 
 [2]
 

 Almost four years later, Lindon sued Dalton and DHC, asserting claims for breach of the shareholders’ agreement against DHC and Dalton, and claims of breach of fiduciary duty and constructive fraud against Dalton. Through a series of rulings, the breach of fiduciary duty and constructive fraud claims were resolved adversely to Lindon and Lindon’s breach of contract claim against DHC was effectively limited to a claim for nominal damages. At trial, the court granted a directed verdict in favor of Dalton on the breach of contract claim. Lindon’s breach of contract claim against DHC was submitted to the jury, which found Lindon was
 
 not
 
 employed by DHC when he signed the agree
 
 *303
 
 ment and was not, as a result, bound by the buy-back provisions of the shareholders’ agreement. The jury further found that the adjusted book value of Lindon’s shares on the buyout date was zero, but that Lindon was entitled to “nominal” damages of $180,000.
 
 [3]
 
 The trial court granted DHC’s motions for directed verdict and JNOV, finding that no reasonable jury could have found that Lindon was not an employee of DHC at the time that he executed the agreement or could have awarded Lindon $180,000 in nominal damages, and entered final judgment in favor of DHC and Dalton. This appeal followed.
 

 Tort claims
 

 We conclude that the trial court correctly disposed of Lindon’s tort claims by way of summary judgment.
 
 See Vesta Constr. & Design, L.L.C. v. Lotspeich & Assoc., Inc.,
 
 974 So.2d 1176 (Fla. 5th DCA 2008);
 
 Detwiler v. Bank of Cent. Fla.,
 
 736 So.2d 757 (Fla. 5th DCA 1999).
 

 Breach of Contract Claim against DHC
 

 Lindon argues that the trial court erred in overriding the jury’s verdict on the pivotal issue in the case, i.e., whether he was an employee of DHC at the time that he signed the shareholders’ agreement. It was conceded below that if Lindon was not an employee at signing, the agreement’s terms allowed him to retain his stock after separation from employment with DHC. Lindon claims that given the jury’s verdict, Dalton wrongfully forced him to redeem his shares in 2002.
 

 When deciding the appropriateness of a directed verdict or JNOV, Florida trial and appellate courts use the test of whether the verdict is, for JNOVs, or would be, for directed verdicts, supported by competent, substantial evidence.
 
 Speedway SuperAmerica, LLC v. Dupont,
 
 933 So.2d 75, 79 (Fla. 5th DCA 2006). A motion for directed verdict or JNOV should be granted only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party.
 
 See Cecile Resort, Ltd. v. Hokanson,
 
 729 So.2d 446, 447 (Fla. 5th DCA 1999). If there are conflicts in the evidence or different reasonable inferences may be drawn from it, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law.
 
 Scott v. TPI Restaurants, Inc.,
 
 798 So.2d 907, 909 (Fla. 5th DCA 2001);
 
 see Etheredge v. Walt Disney World Co.,
 
 999 So.2d 669, 671 (Fla. 5th DCA 2008).
 
 [4]
 

 Here, the trial court misapplied this standard in granting the JNOV. While Dalton and DHC presented significant evidence supporting their position that Lin-don was an employee of DHC at the time
 
 *304
 
 that he executed the shareholders’ agreement, there was some evidence that supported the jury’s verdict that he was not so employed. For example, Lindon testified that he was not an employee at the time that he signed the shareholders’ agreement in March 1999, and he was also not receiving a salary. In addition, when the parties signed the shareholders’ agreement in March 1999, Lindon also executed a federal employee eligibility verification form (1-9), in which DHC declared, under penalty of perjury, “that the employee [Lindon] began employment on August 19, 1999.”
 
 [5]
 
 The trial court minimized this evidence, explaining that Lindon’s testimony was self-serving and not competent substantial evidence; that the absence of a regular salary was understandable given that DHC was a start-up business, and Lindon received stock in lieu of a salary; and that the 1-9 verification form was not conclusive of employment status.
 

 While the court’s analysis may have been relevant in considering DHC and Dalton’s alternative motion for a new trial based on a “manifest weight of the evidence” standard, it was inappropriate in considering a JNOV. Lindon’s testimony did not contradict his previous position in the litigation or a clear written understanding between the parties. Instead, his testimony was competent evidence of his status with DHC and was buttressed by the 1-9 verification form. Accordingly, we conclude that the trial court erroneously made a credibility determination by weighing Lindon’s testimony and other evidence.
 
 See Johnson v. Swerdzewski,
 
 935 So.2d 57 (Fla. 1st DCA 2006) (explaining in context of reversing JNOV that once trial court submits case to jury, credibility assessment of testimony is assigned to jury).
 

 Having concluded that Lindon presented some evidence in support of his contention that he was not an employee of DHC when he signed the shareholders’ agreement, we are compelled to reverse the JNOV order. In doing so, we remand for consideration of DHC’s alternative motion for a new trial.
 
 [6]
 
 In considering that motion, the court should determine whether the verdict is contrary to the manifest weight of the evidence. If it is deemed to be so, the court should order a new trial on the breach of contract claim against DHC.
 
 See Smith v. Brown,
 
 525 So.2d 868 (Fla.1988).
 

 Breach of Contract Claim against Dalton
 

 Lindon also contends that based upon the verdict, he was entitled to retain his DHC stock after separating from employment, and that Dalton wrongfully caused DHC to redeem his stock, thereby breaching the shareholders’ agreement. The trial court granted a directed verdict in favor of Dalton at the close of the evidence, concluding that section 607.0732(6), Florida Statutes (2002), insulates Dalton from personal liability from Lindon’s breach of contract claim. We disagree.
 

 The shareholders’ agreement was one “among Dalton Hotel Corp.... Roy B. Dalton, Jr., Beth H. Nelson and Dale Lindon.” It provides that “any party may enforce this Agreement by specific performance, suit for damages or otherwise.” Dalton claims, and the trial court agreed, that section 607.0732(6) shields him from individual liability. Conversely, Lindon posits that because Dalton was a party to the shareholders’ agreement, his actions render him personally liable for breach of the agreement.
 

 
 *305
 
 The validity of shareholder agreements is recognized by Florida law. § 607.0732, Fla. Stat. (2002). Specifically, section 607.0732(6) provides:
 

 607.0732. Shareholder agreements
 

 [[Image here]]
 

 (6) The existence or performance of an agreement authorized by this section shall not be a ground for imposing personal liability on any shareholder for the acts or debts of the corporation even if the agreement or its performance treats the corporation as if it were a partnership or results in failure to observe the corporate formalities otherwise applicable to matters governed by the agreement.
 

 As the statute clearly states, it protects individual shareholders who sign a shareholders’ agreement from personal liability for “the acts or debts of the corporation.” It does not insulate a shareholder from personal liability for his own breach, if any, of a shareholders’ agreement.
 
 See Stricker v. Epstein,
 
 213 Ga.App. 226, 444 S.E.2d 91, 96 (1994) (recognizing that shareholders’ agreement is between shareholders and cannot bind corporation);
 
 see also Silverstein v. David J. Stone & Co.,
 
 No. Civ. A. 11392-NC, 1998 WL 409151 (Del.Ch.1998) (unreported decision, finding that shareholders were personally liable as parties to shareholders’ agreements). We conclude that the trial court erred in directing a verdict in favor of Dalton on Lindon’s breach of contract claim.
 

 Damages
 

 Because we reverse the JNOV in favor of DHC and the directed verdict on the breach of contract claim against Dalton, we must address the issue of the proper measure of damages applicable to these claims. Preliminarily, we observe that if there is a retrial and the jury finds that Lindon was an employee of DHC when he executed the shareholders’ agreement, the agreement controls the valuation of his stock. However, if he was not an employee when he executed the agreement, the agreement’s valuation of his stock is irrelevant.
 

 The measure of damages issue arose below in several ways. In a pre-trial order, the court denied Lindon’s motion to compel discovery of DHC’s post-2003 financial records. Lindon maintained such records were relevant to his damages resulting from the wrongful redemption of his stock. At trial, Lindon attempted to testify about the value of his stock post-redemption. However, the court excluded the testimony, ruling that the shareholders’ agreement, which provided that the stock would be valued at adjusted book value at the time of the stock’s redemption, would apply regardless of Lindon’s employment status. As such, the jury was instructed that the measure of damages “is the adjusted book value of [DHC] as of March 31, 2002.”
 

 It is well-settled that the purpose of damages is to restore an injured party to the same position that he would have been in had the other party not breached the contract.
 
 Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.,
 
 25 So.3d 593, 596 (Fla. 1st DCA 2009);
 
 Mnemonics, Inc. v. Max Davis Assocs., Inc.,
 
 808 So.2d 1278, 1280 (Fla. 5th DCA 2002). In restoring the injured party to the “same position,” he “is not entitled to be placed, because of that breach, in a position better than that which he would have occupied had the contract been performed.”
 
 Madison Fund, Inc. v. Charter Co.,
 
 427 F.Supp. 597, 608 (S.D.N.Y.1977) (applying Florida law);
 
 see
 
 Restatement (Second) of Contracts § 347 cmt. A (1981) (“Contract damages are ordinarily based on the injured party’s expectation interest and are intended to give him the benefit of his bargain by awarding
 
 *306
 
 him a sum of money that will ... put him in as good a position as he would have been in had the contract been performed.”). Instead, the injured party may only recover those damages that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time that the contract was made.
 
 Mnemonics,
 
 808 So.2d at 1280;
 
 Scott v. Rolling Hills Place, Inc.,
 
 688 So.2d 937, 940 (Fla. 5th DCA 1996). It is not necessary that the parties have contemplated the exact injury that occurred as long as the actual consequences “could have reasonably been expected to flow from the breach.”
 
 Mnemonics,
 
 808 So.2d at 1281.
 

 Relying on
 
 Grossman Holdings Ltd. v. Hourihan,
 
 414 So.2d 1037, 1040 (Fla.1982), DHC and Dalton fix damages as of 2002, the date of the alleged breach. In
 
 Hourihan,
 
 the court held that damages for breach of contract are measured as of the date of the breach and that “fluctuations in value after the breach do not affect the nonbreaching party’s recovery.”
 
 Id.
 
 While that correctly sets forth the general rule, it is subject to exceptions not implicated in
 
 Hourihan. See Lake Region Paradise Island, Inc. v. Graviss,
 
 335 So.2d 341 (Fla. 2d DCA 1976). For instance, in
 
 James Wood General Trading Establishment v. Coe,
 
 191 F.Supp. 330 (S.D.N.Y.1961),
 
 reversed on other grounds,
 
 297 F.2d 651 (2d Cir.1961), and
 
 Mekrut v. Gould,
 
 16 Misc.2d 326, 188 N.Y.S.2d 6 (N.Y.Sup.Ct.1959), the courts deemed evidence of the subsequent value of stock relevant in assessing damages for breach of contract or the negligent failure to sell the stock at a specific time. Due to the difficulty of establishing the value of stock in a close corporation, broad latitude is allowed in proving value, and thus, the value at times other than the date of sale may suffice.
 
 See Glick v. Campagna,
 
 613 F.2d 31 (3d Cir.1979); 79A C.J.S.
 
 See. Regulation
 
 § 385 (2010);
 
 see generally Madison Fund, Inc.,
 
 427 F.Supp. at 609;
 
 Grimes v. Holt,
 
 225 So.2d 566 (Fla. 3d DCA 1969) (holding that measure of damages for conversion of personal property is generally value of property at time of conversion, but damages for conversion of corporate stock are measured by value of stock within reasonable time after conversion).
 

 Consequently, we are of the view that the “time of breach” standard is not an inflexible principle that served to freeze Lindon’s loss to the value of his stock at the time that it was allegedly wrongfully redeemed, a principle supported by the cases that DHC and Dalton rely upon. For instance, in
 
 Shearson Loeb Rhoades, Inc. v. Medlin,
 
 468 So.2d 272 (Fla. 4th DCA 1985), the court held that the measure of damages for delay in delivery of stock certificates is the difference between the value when the certificates should have been delivered and the value when they were actually delivered. Importantly, the court added that had the plaintiff been able to adduce competent evidence that he communicated to the broker an intent to sell on a specific date or for a specific price, his damages could have been based on such values.
 
 Id.
 
 at 274. Further, in
 
 Totale, Inc. v. Smith,
 
 877 So.2d 813 (Fla. 4th DCA 2004), the court determined that an investor, who sent a check for $100,000 to invest in a corporation, was entitled to out-of-pocket damages rather than benefit-of-the bargain damages when the money was not invested. The court explained that the evidence offered of the stock’s value was too vague and speculative to support “benefit of the bargain” damages. Here, Lindon was not permitted to offer evidence of the value of DHC stock after the date his shares were redeemed.
 

 By the nature of this case, it is not certain when Lindon would have sold the
 
 *307
 
 shares following the termination of his employment, assuming that the shareholders’ agreement did not require him to redeem his shares. However, we think that it is unlikely that Lindon would have sold his shares back to DHC in 2002 for the price of $0. Fundamental justice requires that, as between Lindon, DHC, and Dalton, if the calculation of damages is less than precise, the “perils of such uncertainty [in the assessment of damages] should be ‘laid at the [appellees’] door’ ” if the jury concludes Lindon is not bound by the shareholders’ agreement.
 
 Madison Fund, Inc.,
 
 427 F.Supp. at 608 (quoting
 
 Kaufman v. Diversified Indus., Inc.,
 
 460 F.2d 1331, 1338 n. 8 (2d Cir.1972)). Otherwise, Lin-don would be required to prove what DHC and Dalton’s allegedly wrongful act precluded him from doing, i.e., demonstrating that he would have held or sold the stock, and if sold, when he would have sold it.
 

 Based upon a synthesis of the relevant authorities, we conclude that in determining the applicable measure of damages in this case involving the alleged wrongful redemption of stock in a close corporation, the jury may consider evidence that (a) if the stock had not been wrongfully redeemed, Lindon would have tendered it for sale in accordance with Article II of the shareholders’ agreement (“Transfer of Stock During Lifetime”) on a date certain and the value of the stock on that date; (b) if the stock had not been wrongfully redeemed, Lindon would have retained the stock until Dalton disposed of his shares and the value of the stock on that date, or (c) if the stock no longer exists (or the business has been sold), evidence of the proceeds ultimately received for the stock by Dalton and/or DHC. We recognize the inherent uncertainty involved in assessing Lindon’s damages, if any. But, if the jury determines Dalton and/or DHC breached the shareholders’ agreement and wrongfully redeemed Lin-don’s shares, Lindon is entitled to be placed in as good a position as he would have been if the contract had not been breached. At the same time, we are mindful that “even where the defendant by his own wrong has prevented a more precise computation [of damages], the [fact finder] may not render a verdict [with respect to damages] based on speculation or guesswork.”
 
 Bigelow v. RKO Radio Pictures,
 
 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946).
 

 We thus conclude that the order denying the motion to compel discovery was erroneous, as was the trial court’s ruling disallowing Lindon’s testimony concerning the value of DHC’s stock post-redemption. On remand the jury shall be instructed on damages based upon these principles.
 

 In summary, as to the breach of contract claims, the order granting a JNOV in favor of DHC and the directed verdict in favor of Dalton are reversed. The final judgments in favor of DHC and Dalton on those claims are reversed and the cause is remanded for further proceedings consistent with this opinion. The summary judgment in favor of DHC and Dalton on Lindon’s tort claims is affirmed.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 JACOBUS, J„ concurs.
 
 [7]
 

 ROBERTS, C., Associate Judge, concurs.
 

 [1]
 

 . Buy-back provisions of this type require an employee shareholder to sell back stock upon termination from corporate employment. Such a provision is designed to ensure that ownership of all the stock, especially of a close corporation, stays within the control of the remaining corporate owners-employees, those who will continue to contribute to its successes or failures.
 
 Gallagher v. Lambert,
 
 74 N.Y.2d 562, 549 N.Y.S.2d 945, 549 N.E.2d 136, 137 (1989).
 

 [2]
 

 . The shareholders' agreement established adjusted book value as the purchase price for shares purchased pursuant to Article 11(a).
 

 [3]
 

 . After a vigorous dispute, the trial court instructed the jury that the measure of damages "is the adjusted book value of Dalton Hotel Corporation” as the date the buyout was exercised. The only evidence at trial was that the adjusted book value of Lindon’s stock at the time the stock was redeemed was zero. The jury was additionally instructed that if it found the defendants breached the shareholders’ agreement and that no actual loss resulted or loss "has not been established with sufficient certainty,” then an award of only nominal damages for the breach would be proper. The basis for the $180,000 damage award is a mystery.
 

 [4]
 

 . Lindon observes that in pre-trial rulings denying summary judgment, the trial court on two occasions stated that the issue of whether he was "currently employed” by DHC when he signed the shareholders' agreement presented a disputed issue of material fact. However, the determination in a summary judgment context that a disputed issue of material fact exists is not dispositive of whether the plaintiff presented a case at trial sufficient to withstand a motion for directed verdict.
 
 See Ameriseal of N.E. Fla., Inc. v. Leiffer,
 
 738 So.2d 993 (Fla. 5th DCA 1999).
 

 [5]
 

 . Lindon did not prepare the 1-9 form.
 

 [6]
 

 . DHC had alternatively moved for a new trial (and for remittitur) but because of its disposition of the motion for JNOV, the trial court deemed these motions to be moot.