DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CELSIUS HOLDINGS, INC.,**
Appellant,

v.

**STRONG ARM PRODUCTIONS, USA, INC., D3M LICENSING GROUP, LLC,** and **TRAMAR DILLARD** p/k/a **FLO RIDA,**
Appellees.

No. 4D2023-0452

[December 11, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE21-008997.

Elliot H. Scherker, Brigid F. Cech Samole and Bethany J. M. Pandher of Greenberg Traurig, P.A., Miami, for appellant.

Deepak Gupta, Gregory A. Beck and Alisa Tiwari of Gupta Wessler LLP, Washington, DC, and Alan Lawson, Jason Gonzalez and Samuel J. Salario, Jr., of Lawson Huck Gonzalez, PLLC, Tallahassee, for appellees.

KLINGENSMITH, C.J.

Appellant Celsius Holdings, Inc., a manufacturer of fitness energy drinks, appeals a final judgment entered against it in favor of the appellees in a breach of contract action following a jury trial. Celsius raises several issues on appeal, though we find only one has merit. On that issue, Celsius argues the trial court erroneously allowed the appellees to pursue an improper measure of damages, specifically the stock valuation at the time of trial rather than the date of the alleged breach of contract. We agree and reverse on that issue and affirm on the others without comment.

Appellee Tramar Dillard is a musical artist performing under the stage name "Flo Rida." Appellee Strong Arm Productions USA, Inc., Dillard's management company, retained appellee D3M Licensing Group to seek endorsement opportunities for Dillard. In 2014, D3M secured an endorsement deal for Dillard whereby Celsius engaged Dillard as a brand ambassador. The written agreement ("the 2014 agreement") was in conjunction with a project in which Celsius would develop a modified

version of its core products in a powdered form and co-brand these products using Dillard's rights of publicity and intellectual property. The parties agreed to an "initial term" of two years, and unless the parties agreed to an "extended term" in writing, the 2014 agreement stated it would expire in March 2016.

Because Celsius could not afford to pay Dillard's customary fee for an endorsement deal, the 2014 agreement included stock compensation in lieu of up-front cash where Celsius would "issue up to 1,000,000 shares of restricted shares of its common stock, as directed by D3M" as compensation. Celsius was to issue an initial 250,000 shares as of the date of the execution of the 2014 agreement. Then, if Celsius achieved $1,000,000 in "gross cumulative Co-branded revenues in any twelve-month period during the Term" of the 2014 agreement, Celsius would issue an additional 250,000 shares as "bonus compensation." Finally, if Celsius sold "690,000 units of Co-branded Product through its channels of distribution following the execution of" the 2014 agreement, Celsius would issue an additional 500,000 shares of "incentive compensation."

The parties later entered into a second written agreement in April 2016 ("the 2016 agreement"). The 2016 agreement included a provision that Celsius would issue another 250,000 shares of restricted common stock as compensation to D3M and Dillard after execution of the agreement. The 2016 agreement expired in 2018 after the thirty-month term identified in the written agreement had ended.

In 2021, the appellees sent Celsius a letter demanding that Celsius transfer any stock or royalties due under the agreements. Celsius rejected that demand on April 30, 2021, claiming that the benchmarks listed in the 2014 agreement for the bonus and incentive compensation had not been reached, and that no royalties were owed.

The appellees filed suit against Celsius for breaches of the two agreements. In their complaint, the appellees alleged that the benchmarks for both the bonus compensation and incentive compensation provisions in the 2014 agreement had been met, yet Celsius failed to notify the appellees or issue the additional shares of company stock in breach of the agreements or issue the additional shares of company stock in breach of the agreement.

When the case went to trial in 2023, one of the questions presented for the jury's determination was whether Celsius had breached its contract with the appellees, and if so, on what date the breach had occurred. The appellees argued that Celsius had breached the 2014 agreement (that was

2

renewed under the 2016 agreement) on April 30, 2021, when Celsius rejected the demand in the appellees' letter.  However, the trial court allowed the jury to determine the appellees' damages by valuing Celsius' stock as of January 13, 2023, the last day when evidence was presented at trial.  Celsius argues this was error, and we agree.

We review whether a trial court applied the correct measure of damages on a breach of contract claim de novo.  *See Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Invs., LLC*, 238 So. 3d 908, 911 (Fla. 2d DCA 2018) (citing *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 673 (Fla. 3d DCA 2011)).  A non-breaching party in a breach of contract action is entitled to recover the benefit of its bargain under the contract.  *Perera v. Diolife LLC*, 274 So. 3d 1119, 1124 (Fla. 4th DCA 2019) (quoting *Nat'l Educ. Ctrs., Inc. v. Kirkland*, 635 So. 2d 33, 34 (Fla. 4th DCA 1993)).  "[T]he goal of damages is to place the injured party in the same position in which it would have been had the breach not occurred."  *Id.* (quoting *Tucker v. John Galt Ins. Agency Corp.*, 743 So. 2d 108, 111 (Fla. 4th DCA 1999)).

However, "[d]amages for a breach of contract should be measured as of the date of the breach."  *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1040 (Fla. 1982) (first citing *Nat'l Commc'ns Indus., Inc. v. Tarlini*, 367 So. 2d 670 (Fla. 1st DCA 1979); and then citing *Lake Region Paradise Island, Inc. v. Graviss*, 335 So. 2d 341 (Fla. 2d DCA 1976)).  As a result, fluctuations in value occurring after the breach should not be considered and do not affect the recovery allowed.  *Id.*

We acknowledge exceptions to this general rule exist.  *See Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 306 (Fla. 5th DCA 2010).  For example, the Fifth District in *Lindon* addressed the proper measure of damages in a breach of contract action where the minority shareholder in a closely held corporation alleged that the company had wrongfully redeemed his shares at $0 per share.  *Id.* at 301-02, 305.  The company and the majority shareholder argued the appropriate measure of the minority shareholder's damages was the shares' value on the date of the alleged breach.  *Id.* at 306.  The Fifth District rejected this argument and explained that, because of the difficulty in establishing the value of stock in a close corporation, parties are afforded broad latitude in proving value.  *Id.*  The court further explained:

> By the nature of this case, it is not certain when [the minority shareholder] would have sold the shares . . . .  However, we think that it is unlikely that [the minority shareholder] would have sold his shares back to the [company] . . . for the price of $0.

3

*Id.* at 306-07. The court concluded that the perils of the uncertainty in calculating the minority shareholder's damages should be laid at the door of the majority shareholder and company. *Id.* at 307.

In another case, *Shearson Loeb Rhoades, Inc. v. Medlin*, 468 So. 2d 272 (Fla. 4th DCA 1985), an investor sued a broker for failing to effect timely transfer of stocks. *Id.* at 273. The trial court deviated from the general rule and measured the investor's damages by "the difference between the value at which [the investor] wanted to sell the securities . . . and the value of such shares at their respective dates of delivery." *Id.*

We reversed, holding that the trial court had not applied the proper measure of damages. *Id.* The trial court had improperly departed from the general rule for measuring damages on the basis that the investor would have received no damages under the general rule and thus would not have been placed in "as advantageous a position as he would have occupied had his contract not been broken." *Id.* at 273-74. We rejected the trial court's approach because no evidence showed that the investor had communicated to the broker his intent to sell the stock on a specific date or at a specific price when the stocks were delivered. *Id.* at 274. As a result, the damages imposed by the trial court were not such as would "naturally and proximately [result] from the breach, or such as may reasonably be supposed to have been within the contemplation of both parties at the time they made the contract . . . ." *Id.* (alteration in original) (quoting *Tuttle/White Constructors, Inc. v. Montgomery Elevator Co.*, 385 So. 2d 98, 100 (Fla. 5th DCA 1980)).

In this case, Celsius is correct that the trial court erred by relying on *Lindon* and *Medlin* in allowing the jury to measure the appellees' damages as of the last day when evidence was presented at trial. Although *Lindon* determined that it was appropriate to grant the minority shareholder latitude in proving his damages because of the difficulty and uncertainty in establishing the value of stock in a close corporation, *Lindon*, 49 So. 3d at 306-07, we find this case distinguishable because it does not appear the appellees had difficulty in measuring the value of the stock to which they claimed entitlement. In fact, the appellees here represented to the jury the value of Celsius' stock at different points in time over the course of events at issue. For example, the appellees asserted that Celsius' stock price was about 50 cents per share when the parties entered the 2014 agreement but rose to $1.95 by the end of the 2014 agreement's two-year term. Further, the appellees told the jury that the stock was worth $57.30 on April 30, 2021, when Celsius breached the agreements by rejecting the demand in the appellees' letter. The trial court did not have to grant the

appellees broad latitude in proving the value of their damages as occurred in *Lindon.*

In *Medlin,* we held that a court may deviate from the general rule for the measure of damages in a delayed delivery of stock case if evidence shows the plaintiff communicated intent to sell the stock on a specific date or at a specific price at the time of delivery. *See Medlin,* 468 So. 2d at 274. Here, although the appellees presented evidence that Dillard intended to keep the stock rather than immediately sell it—and that Dillard did indeed keep most of the stock which he received—no evidence showed that the appellees communicated to Celsius their intent to keep the stock indefinitely or up until a specific date or a specific price. Accordingly, like the investor in *Medlin,* the appellees failed to establish that it was appropriate to deviate from the general rule by measuring damages as of the last day when evidence was presented at trial.

As a result of the jury's finding that a breach of contract occurred, we find the trial court erred in allowing the appellees to present evidence and argument on the valuation of the stock at issue calculated as of the last day of trial. Because the jury relied on the improper valuation argument and evidence in calculating the damages award, we reverse the damages portion of the final judgment. Celsius argues this court should remand for the trial court to determine the appellees' damages based on the stock price on the date of the alleged breach. However, the appellees also argued below that the jury could measure their damages based on the stock price as of November 1, 2021, because the stock was restricted, and the appellees could not have sold the stock until November 1. Accordingly, we remand to the trial court for the presentation of evidence to a fact finder regarding these two valuation options—the date of breach, April 30, 2021, and the date when the appellees argue they could have first sold the stock, November 1, 2021.

*Affirmed in part, reversed in part and remanded.*

CONNER and KUNTZ, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**