PER CURIAM.
This is an appeal by the defendant, Grimes, from a summary final judgment in an action brought by a stock brokerage firm. The complaint was framed in two counts. The first alleged that during October and November 1966 and February 1967 the defendant converted to his own use 1,000 shares of common stock and 1,000 shares of registered certificates of a value of $20,000, which shares were the property of the plaintiff. The second was an alternative count praying for the return of $20,000 as money had and received by defendant from a sale by the plaintiff of 1,000 shares of common stock and 1,000 shares of registered certificates during October and November 1966 and February 1967.
The plaintiff instituted its action on March 5, 1968. On March 29, 1968 the appellant customer wrote a letter to the clerk of the circuit court upon which the trial judge made a notafion “Answer & Motion”. The letter categorically denied “the complaint” and in addition contained the following allegations:
“ * * * I personally hold a cancelled check made payable to Thomson & Mc-Kinnon April 12th, 1967, and endorsed by them through Chase Manhattan Bank New York City, on April 18th, 1967 in which over front of check reads: ‘In full all debits to date, account #65-129674 — 1.’ The check was paid April 19th, 1967 by my bank, this being two months after the dates stated in the First and Second action of the complaint.”
Thereafter the plaintiff filed an affidavit of one of its partners containing the following assertions: (1) on February 24, 1966, plaintiff delivered to defendant 1,000 shares of common stock of the Missouri-Kansas-Texas Railroad Company and duly credited those shares to the defendant’s account; (2) on March 7, 1966, the plaintiff sold 1,000 shares of common stock for the defendant, and the proceeds of the sale were duly credited to defendant’s account; (3) on March 21, 1966, the plaintiff through a clerical error mistakenly made an entry in the defendant’s account which credited the defendant with 1,000 shares of stock of the same corporation; (4) on July 14, 1966, at the defendant’s directions, the plaintiff transferred the defendant’s account to another brokerage company, and by a second mistake the plaintiff delivered to the successor brokerage company 1,000 shares of registered certificates of the Missouri-Kansas-Texas Railroad Company for the account of the defendant; (5) on August 30, 1966, the plaintiff through another *568 error delivered an additional 1,000 shares of common stock of the Missouri-Kansas-Texas Railroad to the successor brokerage company for the account of the defendant; (6) as a result of these errors the plaintiff overdelivered 1,000 shares of the railroad certificates and 1,000 shares of railroad stock for the account of the appellant; (7) the foregoing errors were discovered on June 29, 1967, and the plaintiff demanded return of the securities; (8) on July 26 and August 7, 1967, plaintiff made further demand for return of the securities; (9) the defendant sold most of the securities on October 21, 1966, and March 23, 1967; (10) in order to cover the “short” positions caused by the defendant’s failure to return the securities, the plaintiff on October 25, 1967, purchased replacement securities pursuant to an agreement between the parties executed when defendant’s account was in the plaintiff’s hands; (11) the total cost of the purchase of the replacement stock was $39,378.55.
Faced with the motion for summary judgment the defendant procured the services of an attorney who filed an affidavit by the defendant in opposition to the motion. In that affidavit the defendant swore he received from the plaintiff only stock which belonged to him and that he did not receive any stock to which he was not entitled. He also swore that the numerous errors concerning his account with the plaintiff-appellee were “straightened out” (after many demands by each party) by the defendant’s payment of $40 demanded by the plaintiff (the defendant denied he owed the plaintiff $40) and that the $40 payment in May 1967 completely compromised and settled all disputed accounts between the parties.
The court held its first hearing on the plaintiff’s motion for summary judgment on July 3, 1968. On that day the defendant filed a motion for leave to file an amended answer and tendered an amended answer which set forth in legal terms the denial of liability and asserted the affirmative defenses of accord and satisfaction, payment, and estoppel by irresponsible, unethical, and fraudulent conduct on the part of the plaintiff upon which conduct the defendant relied. The defendant at the same time filed a motion for summary judgment in his favor. On July 9, 1968, the trial court entered an order taking the plaintiff’s motion for summary judgment under advisement for a period of 20 days and providing that within that period the defendant should have the right to file such “affidavits and proofs as he may be advised.”
The defendant attempted to institute discovery proceedings by filing interrogatories and by noticing a deposition of the partner who gave the affidavit filed in support of plaintiff’s motion for summary judgment. On July 23 the court entered an order upon defendant’s motions filed July 3 staying all discovery proceedings in the cause pending the filing of defendant’s further affidavit in opposition to plaintiff’s motion for summary judgment. The court rejected defendant’s motion for leave to amend answer. Thereafter the trial court entered an ex parte order granting plaintiff’s ex parte motion to amend the ad damnum clause of its complaint so that the complaint would demand $40,000, plus interest and costs. On August 9, 1968, the summary final judgment appealed from was entered. It provided that the plaintiff recover from the defendant $39,378.55 principal, plus interest.
The defendant urges error in the entry of summary final judgment for the following reasons: (1) he was not given notice of the nature and extent of the judgment he was defending against because of the ex parte amendment of the ad damnum clause during the pendency of the motion; (2) there were genuine issues of material fact to be tried; (3) the plaintiff did not carry its burden of disproving the affirmative defense of accord and satisfaction. We do not discuss the legal effect of plaintiff’s amendment to change the amount of its claim against the defendant from $20,-000 to $40,000 during the pendency of the summary judgment proceedings, because *569 we find it necessary to reverse the judgment upon the ground that the pleadings and affidavits on file reveal genuine issues of material fact which could not be resolved by summary judgment. The trial court in effect ruled that the burden was upon the defendant, who was the party defending against the plaintiff’s motion for summary judgment, to come forward with a receipt or other documentary proof of ownership of the stock in order to avoid the penalty of summary judgment. Such a ruling is not in accord with the holdings of the Supreme Court of this state upon summary judgment. See Holl v. Talcott, Fla. 1966, 191 So.2d 40; Visingardi v. Tirone, Fla. 1967, 193 So.2d 601.
In Emile v. First National Bank of Miami, Fla.App.1961, 126 So.2d 305, this court dealt with a situation in which a defendant had filed a number of affirmative defenses and a set-off. The plaintiff moved for summary judgment without presenting any affidavit or evidence in opposition to the affirmative defenses and the set-off. The defendant filed nothing in opposition to the plaintiff’s motion for summary judgment. The trial court granted summary judgment and the defendant appealed. In reversing that judgment this court pointed out that the plaintiff did not carry the burden of submitting evidence to refute the affirmative defenses and the set-off. The opinion points out that when moving for summary judgment in causes in which there are affirmative defenses on file, a plaintiff must do more than merely establish the case made by his complaint, he must also show the insufficiency, inapplicability, or falsity of the affirmative defenses on file. We need not repeat here the numerous authorities cited in that opinion. We point out that our holding is directly applicable here since after trial the court accepted the answer containing the affirmative defense of accord and satisfaction, the plaintiff completely disregarded that affirmative defense. The rule in the Emile case was followed in Underwriters Insurance Company v. Sisung, Fla. App.1965, 174 So.2d 461; Pompano Paint Co. v. Pompano Beach Bank & Trust Co., Fla.App.1968, 208 So.2d 152; and Brinkley v. Freedom National Bank of New York, Fla.App.1968, 210 So.2d 465. Since this case must be remanded for trial, we believe the interests of justice will be served by a discussion of an additional error concerning the amount of damages awarded by the judgment. The language of the first count of the complaint (conversion) and of the affidavit in support of the complaint allege the conversion occurred during the months of October and November 1966 and February 1967. It was sworn that the purchase to replace the allegedly converted securities was made on October 25, 1967; and it was the amount of the purchase price on that date which the court awarded as damages. As a general rule the measure of damages for the conversion of personal property is the value of the property at the time of the conversion. But damages for the conversion of corporate stock “are to be measured by the value of the stock within a reasonable time after the conversion.” Klein v. Newburger, Loeb & Co., Fla.App. 1963, 151 So.2d 879, cited in 18 Am.Jur. 2d, Conversion, § 115, and 7 Fla.Jur., Conversion, § 23. In the Klein case we held erroneous an award of damages based on the cost to the purchaser more than a year after the conversion of corporate stock and ordered that the award should be based on the value of the stock at the time of its conversion. If a conversion is proved in the present cause, damages must be awarded in accordance with the Klein decision.
Plaintiff’s second count claims damages for money had and received from the sale of securities by the plaintiff for the defendant’s account during the months of October and November 1966 and February 1967. Therefore the damages recoverable under this count are limited to the money actually received.
We hold that the defendant-appellant must be afforded an opportunity to prove his defenses. To that end we reverse the summary judgment appealed from and re *570 mand the cause to the trial court with directions: (1) to grant defendant’s motion to amend his answer; (2) to allow defendant to proceed with discovery by propounding interrogatories, making requests for admissions, seeking to have documents produced, and taking depositions in accordance with motions filed in this cause prior to the entry of the summary judgment; (3) to take such further proceedings in this cause necessary for a trial of the issues of fact.
Reversed and remanded with directions.