[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11309
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cv-62040-WPD

TEC SERV, LLC,
a Florida Limited Liability Company,
JOHN R. TOSCANO, INC.,
a Florida corporation,

Plaintiffs-Counter
Defendants-Appellants,

MARILYN TOSCANO,
JOHN TOSCANO,

Third Party Defendants-
Counter Defendants-Appellants,

versus

MICHAEL ALAN CRABB,
individually,
A DESIGN AT SUNNINGHILL, INC.,
a Florida corporation,

Defendants-Third Party
Plaintiffs-Counter Claimants-
Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 11, 2015)

Before MARTIN, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

John Toscano and Marilyn Toscano (collectively, the Toscanos) appeal the district court's denial of their motion for attorneys' fees and costs in a civil suit brought against them in their individual capacities by a former work associate, Michael Crabb. Upon review, we vacate and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

To place the current appeal in context, it is first necessary to briefly recount the procedural history of this case. In 1985, John Toscano formed an engineering and project management services company, John R. Toscano, Inc. (JRTI). In July 2005, JRTI hired Crabb as an engineer. In 2008, the Toscanos and Crabb formed another company, Toscano Engineering and Construction Services, LLC (TEC Serv), to provide engineering contracting services on behalf of large petroleum-related customers. Pursuant to the TEC Serv Members' Agreement (the Agreement), the Toscanos held 52 percent of the membership interest in TEC Serv

2

and Crabb owned the remaining 48 percent interest.  Crabb served as Vice President and his duties included the marketing and sale of TEC Serv's services.

In July 2011, the Toscanos terminated Crabb's membership interest and employment with TEC Serv based on his alleged failure to adhere to company policies.  In September 2011, Crabb filed suit in state court, alleging that the Toscanos and TEC Serv breached the Agreement and the implied covenant of good faith and fair dealing by terminating his employment.  The Toscanos and TEC Serv subsequently removed the action to federal court.

TEC Serv and JRTI then filed a separate sixteen-count suit[1] against Crabb. Briefly stated, TEC Serv and JRTI alleged that Crabb: (1) breached the terms of a non-competition clause in the Agreement with his post-termination conduct; and (2) misappropriated and converted a company laptop and USB drive that contained confidential information, including trade secrets and project, financial, business, and employment records.

Crabb in turn filed a thirteen-count counterclaim and third party complaint against TEC Serv and JRTI, and he also named the Toscanos as individual defendants.  Crabb largely reiterated the claims from his original state-court complaint surrounding his termination, namely, breach of the Agreement, breach

---

[1] In their complaint, TEC Serv and JRTI alleged, *inter alia*, violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, the Lanham Act, 15 U.S.C. § 1126, the Florida Deceptive and Unfair Trade Practices Act, misappropriation of trade secrets, trespass of chattels, conversion, and replevin.

of the covenant of good faith, fraudulent inducement, and a declaration that the non-compete clause in the Agreement was void by material breach.

In a motion for summary judgment, the Toscanos argued they could not be held individually liable for any purported breach of the Agreement because "any actions taken by the Toscanos were in their representative capacity and on behalf of TEC Serv, and not as individuals." The district court rejected this argument and concluded that the Toscanos could be held individually liable for the purported breach because they signed the Agreement in their individual capacities.

Following a twelve-day bench trial, the district court found in favor of TEC Serv on its claim that Crabb engaged in conversion when he retained a laptop and a USB drive and granted the request for replevin of those items. But the court highlighted that TEC Serv had failed to establish damages. Additionally, the court noted that TEC Serv's remaining claims failed, and all of Crabb's claims were without merit because he was properly terminated due to his breach of TEC Serv's policies. The court observed that "[t]his case is not unlike a divorce case" with each side accusing the other of wrongdoing, and thus "the outcome to the parties' disputes should be a wash."

After entry of judgment, TEC Serv, JRTI, and the Toscanos jointly moved[2] for attorneys' fees and costs based on the terms of the Agreement, which provided, in pertinent part, that:

> Should it become necessary for any party to institute legal action to enforce the terms and conditions of this Agreement, the prevailing party or parties shall be awarded a reasonable attorneys' fee, which shall include a reasonable attorneys' fee for any appellate proceedings and expenses, including any accounting expenses and costs.

The Toscanos highlighted that as third-party defendants, they were entitled to fees and costs because they had prevailed on each of Crabb's claims against them. The magistrate judge issued a report and recommendation (R&R), recommending that the Toscanos' motion for fees be denied because "[n]o damages were proved by any party." The district court adopted the R&R, explaining "Tec Serv *et al.*" had succeeded only on a conversion claim and replevin claim, but lost on thirteen other claims, while Crabb had lost on all his claims. As such, the court concluded that "there was no 'prevailing party' entitled to fees or costs under the Members' Agreement." The instant appeal followed.[3]

## II. STANDARD OF REVIEW

---

[2] Crabb also submitted a motion for attorneys' fees, but noted that "based on . . . controlling precedent and the Court's findings of fact and conclusions of law, neither Plaintiffs nor Defendant should be awarded their or his attorneys' fees."

[3] The parties do not raise any arguments pertaining to the merits of the underlying judgment in their appellate briefs. As such, the sole issue on appeal is whether the district court erred by denying the Toscanos' motion for attorneys' fees and costs.

Under Florida law, "where a contract provides for an award of prevailing party attorney's fees, the trial court is without discretion to decline to enforce that provision." *Lasco Enters., Inc. v. Kohlbrand*, 819 So.2d 821, 826 (Fla. Dist. Ct. App. 2002). In limited circumstances, however, courts may determine that no prevailing party exists and may decline to award any fees pursuant to a contractual provision. *Id.* at 826-27. We review the factual findings underlying a district court's determination regarding prevailing party status for clear error. *Church of Scientology Flag Serv., Org., Inc. v. City of Clearwater*, 2 F.3d 1509, 1512-13 (11th Cir. 1993). "Whether the facts as found suffice to render the plaintiff a 'prevailing party' is a legal question reviewed *de novo*." *Id.* at 1513.

## III. DISCUSSION

TEC Serv's Members' Agreement provides for an award of attorneys' fees and costs to the "prevailing party" on any claim brought to "enforce the terms and conditions" of the Agreement. The Agreement, by its own terms, is governed by Florida law. The parties do not dispute that Crabb sued the Toscanos, individually, to enforce the terms and conditions of the Agreement. The only question, therefore, is whether, under Florida law, the Toscanos would be considered the prevailing party on Crabb's claims.

Under Florida law, the prevailing party for attorneys' fees is "the party prevailing on the significant issues in the litigation." *Moritz v. Hoyt Enters., Inc.*,

6

604 So.2d 807, 810 (Fla. 1992).  Notably, a party need not obtain affirmative relief to be considered a prevailing party; it is enough that a party successfully defends against claims brought against it.  *See Point E. Four Condo. Corp. v. Zevuloni & Associates, Inc.*, 50 So.3d 687, 688 (Fla. Dist. Ct. App. 2010) ("When one party loses in an action for breach of contract, the adverse party is the prevailing party.").

Applying these principles here, the Toscanos are prevailing parties because Crabb lost all of his claims against them.  In fact, the district court specifically found all of Crabb's claims failed as a matter of law.  Nonetheless, the district court concluded no party to the litigation—the Toscanos included—qualified as prevailing parties because, according to the district court, the dispute "ended in a wash" and "no party obtained any substantial relief."

While that may be true with respect to the litigation between TEC Serv and Crabb, there was no "wash" between the Toscanos and Crabb.  *See, e.g.*, *Schoenlank v. Schoenlank*, 128 So. 3d 118, 122 (Fla. Dist. Ct. App. 2013) (affirming trial court's decision not to award attorneys' fees because "[e]ach party prevailed, and lost, on significant issues" and thus "neither party clearly prevailed").  Crabb sued the Toscanos in their individual capacities, legally separate from TEC Serv.  *See* Fla. Stat. § 605.0108(1) (noting that a limited liability company such as TEC Serv is considered "an entity distinct from its members").  As third-party defendants, the Toscanos had no role in the litigation

7

between TEC Serv and Crabb.  Although the Toscanos were listed out as individual defendants in Crabb's suit, they did not join TEC Serv's suit against Crabb and never filed a counterclaim against Crabb.  *Cf. AmSouth Bank v. Wynne*, 772 So.2d 574, 575 (Fla. Dist. Ct. App. 2001) (stating if a corporate shareholder suffers damages "only indirectly . . . as a result of injury to the corporation, the stockholder does not have a cause of action as an individual") (citation omitted)).  Accordingly, the district court should have analyzed whether the Toscanos qualified as prevailing parties separate and apart from whether TEC Serv qualified as a prevailing party.[4]

Unlike TEC Serv, who won on some issues and lost on others, the Toscanos prevailed on every claim.  Accordingly, the Toscanos were prevailing parties entitled to attorneys' fees under the Agreement.  We therefore vacate the district court's order and remand for the court to determine the amount of expenses and reasonable attorneys' fees for the services of the Toscanos' attorneys in successfully defending Crabb's claims for breach of the Agreement.

**VACATED AND REMANDED.**

---

[4] Notably, in denying the Toscanos' motion for summary judgment, the district court highlighted that the Toscanos had signed the Agreement as individuals, and thus could have been held personally liable for any damages Crabb sustained as a result of their alleged breach.  *See Lindon v. Dalton Hotel Corp.*, 49 So.3d 299, 304-05 (Fla. Dist. Ct. App. 2010) (holding that if an individual signs a contract in his or her individual capacity, that individual may be liable for his or her breach of that contract, even if that agreement also has a corporation as a signatory).  For the same reasons, we believe the Toscanos should be viewed as separate third-party defendants in an assessment of their entitlement to attorneys' fees and costs.