IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

RICHARD LEMON AND
LEANNE LEMON,

        Appellants,

        Case No.  5D21-2771
v.                   LT Case No. 2018-CA-057724-X

PEOPLE'S TRUST INSURANCE
COMPANY,

        Appellee.
_____/

Opinion filed June 3, 2022

Appeal from the Circuit Court
for Brevard County,
Curt Jacobus, Judge.

Matthew G. Struble and
Christine M. Deis, of Struble,
P.A., Indialantic, for Appellants.

Robert Alden Swift, of
Swift Legal Group, P.A.,
Orlando, for Appellee.


WOZNIAK, J.

      Richard and Leanne Lemon appeal the final judgment rendered in

favor of their homeowners insurance carrier, People's Trust Insurance

Company ("PTI"), after a jury trial. The Lemons' home sustained damage caused by Hurricane Matthew, and after cashing PTI's check covering the cost to repair the roof, fence, and master bedroom ceiling, the Lemons subsequently discovered additional damage to their home and sought to supplement their damage claim with PTI. PTI refused additional payment because, it asserted, the Lemons' act of cashing the check constituted full settlement of all claims, and thus their supplemental claim was barred by accord and satisfaction. The jury agreed with PTI, determining that while the Lemons had a supplemental claim against PTI, that claim was barred by accord and satisfaction. On appeal, the Lemons argue that they were not precluded from submitting a supplemental claim because neither common law nor statutory accord and satisfaction applies. We agree and reverse the final judgment.[1]

The Lemons' home was damaged by Hurricane Matthew on October 6, 2016. They reported their damage claim to PTI, and the property was inspected on December 8, 2016. Eleven days later, on December 19, 2016, PTI sent the Lemons two letters. One letter advised the Lemons that there was coverage for the loss and that PTI had elected to use its preferred

---

[1] Because of our holding that PTI's accord and satisfaction defense is inapplicable in its entirety, we do not address the Lemons' other arguments raised on appeal.

contractor, Rapid Response Team, LLC ("RRT") to repair their property.  The letter further advised:

> Sometimes this scope changes as repairs move forward and new conditions are discovered.  <u>If that happens, you have the right to supplement your claim to include newly discovered damages so long as they are damages which are covered under your policy</u>.

(Emphasis added).  The letter instructed the Lemons how to proceed if they did not agree with the scope of repairs attached to the letter, but if there was no disagreement, the assigned adjuster or RRT would be contacting the Lemons to request execution of a written work authorization granting permission for RRT to commence repair work.

The scope of repairs document attached to the letter stated in pertinent part:

> Please refer to the enclosed itemized estimate.  This estimate contains our scope and valuation of the damages for the reported loss and was prepared using reasonable and customary prices for your geographic region.  <u>If any hidden, or additional damage and/or damaged items are discovered, please contact me immediately.  Coverage for hidden or additional damages and/or damaged items, would need to be determined, and may require an inspection/re-inspection for further consideration</u>.  Please do not destroy, or discard any of the hidden or additional damages and/or damaged items, until we have had an opportunity to review and inspect the hidden or additional damages and/or damaged items.

(Emphasis added).

The other letter sent the same day, titled "Claim Settlement Letter," contained statements inconsistent with those in the previously described letter. It stated that PTI had been unable to obtain an executed work authorization from the Lemons and, as a consequence, PTI was foregoing its right to repair covered damages using RRT and instead was issuing them a check for $15,286.40. The Claim Settlement Letter specified, "This agreement is based upon our mutual agreement as to the scope and amount of your loss." It continued:

> Your endorsement of this check memorializes your acceptance of the scope and amount of damages we previously reviewed and as reflected in the attached estimate, it is offered solely to bring about a complete and final resolution of your claim. If, for one reason or another, you choose not to endorse the enclosed check, or you no longer agree with scope and/or amount of loss we previously agreed upon, please notify the undersigned at your earliest convenience and PTI will proceed with repairs in accordance with the E023 Preferred Contractor Endorsement, and any scope disputes will be resolved in accordance with the scope dispute mechanism in your policy.

(Emphasis added).

On December 20, 2016, the day after PTI sent the letters to the Lemons, PTI issued a check to the Lemons in the amount of $15,286.40, which it reissued on December 28 because the first check was made out to

4

an incorrect mortgagee. The check stub bore the notation: "REASON: FULL AND FINAL PAYMENT - Full & final settlement in accord w/ claim settlement."

Approximately a month after cashing the check, the Lemons discovered more moisture damage in their home's ceilings, garage, and home office and advised PTI, through a public adjuster, of their supplemental claim. Ultimately, the Lemons submitted a Sworn Proof of Loss claim to PTI for $35,155.53. When PTI did not respond to their claim, the Lemons filed the underlying breach of contract action. PTI answered and raised, pertinent to this appeal, accord and satisfaction as an affirmative defense:

> As its First Affirmative Defense, without waiver of any defense as to coverage based the terms and conditions of the policy, Defendant asserts that the Plaintiffs' claim and lawsuit are barred by Accord and Satisfaction. Plaintiffs and Defendant reached a mutually agreed settlement of Plaintiffs' entire claim and Defendant issued the mutually agreed payment to Plaintiffs in performance of the settlement agreement.

The affirmative defense made no distinction between common law and statutory accord and satisfaction.

At trial, the Lemons testified that prior to PTI's issuance of the check, they never had any conversations with PTI that quantified the amount of damage to their home. Rather, PTI unilaterally determined the amount of

5

loss it was going to pay based on an agreed-upon scope of work; the Lemons did not dispute the amount of the check as payment for the unilaterally determined amount of loss because they understood they could file a supplemental claim later if needed. Such supplemental claim was necessary because the Lemons discovered additional damage to their home after depositing PTI's check.

After the Lemons rested their case, PTI sought a directed verdict, arguing that once it tendered the check and the Lemons accepted it, there was an accord and satisfaction that barred any further recovery. The trial court denied the motion, and PTI presented its witnesses. None of PTI's witnesses testified to the existence of any dispute with the Lemons prior to the Lemons' supplemental claim.

After PTI's final witness, the Lemons moved for a directed verdict on PTI's accord and satisfaction affirmative defense, arguing that it was undisputed that at the time the Lemons accepted and cashed the check, the parties agreed that the Lemons could submit supplemental claims should they uncover further damage. The Lemons asserted that there was no evidence of a superseding agreement or a mutual intent to settle a dispute, and accordingly, PTI had not met its burden to establish the requisite elements of common law accord and satisfaction. The court denied their

6

motion and submitted the case to the jury. The jury determined that while the Lemons had a supplemental claim for damage discovered after their acceptance of PTI's check, the supplemental claim was barred by accord and satisfaction. The Lemons filed a Motion for Judgment in Accordance with Prior Motion for Directed Verdict or Motion for New Trial, which the court denied.

In reviewing the trial court's rulings, we are mindful of the applicable standard of review:

> A trial court's ruling on a motion for directed verdict is reviewed de novo. 21st Century Centennial Ins. Co. v. Thynge, 234 So. 3d 824, 826 (Fla. 5th DCA 2017). A motion for directed verdict shall be granted "only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party." Scott v. TPI Rests., Inc., 798 So. 2d 907, 908 (Fla. 5th DCA 2001) (citing Blake v. Hi-Lu Corp., 781 So. 2d 1122, 1123 (Fla. 3d DCA 2001)).

Universal Prop. & Cas. Ins. Co. v. Motie, 335 So. 3d 205, 206 (Fla. 5th DCA 2022). A trial court's denial of a motion for judgment notwithstanding the verdict is also reviewed de novo. Miami-Dade Cnty. v. Jones, 232 So. 3d 1127, 1129 (Fla. 3d DCA 2017). "When deciding the appropriateness of a directed verdict or JNOV, Florida trial and appellate courts use the test of whether the verdict is, for JNOVs, or would be, for directed verdicts,

7

supported by competent, substantial evidence." <u>Lindon v. Dalton Hotel Corp.</u>, 49 So. 3d 299, 303 (Fla. 5th DCA 2010) (citing <u>Speedway SuperAmerica, LLC v. Dupont</u>, 933 So. 2d 75, 79 (Fla. 5th DCA 2006)).

Turning now to the Lemons' argument on appeal, the Lemons assert that their supplemental claim[2] could not have been the subject of accord and

---

[2] As noted above, the jury specifically found that the Lemons had proved they had a supplemental claim for damages caused by Hurricane Matthew. Pursuant to the homeowners policy at issue, supplemental claims could be filed for hurricane-caused damages for up to three years after the date of the hurricane:

> 4. Notice of Hurricane or Windstorm Claims - If Windstorm coverage is provided in this policy <u>a claim, "supplemental claim" or "reopened claim" for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy and within three years after the hurricane first made landfall or a Windstorm caused the damage</u>.
>
> This condition concerning time for submission of claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition including any amendment to that condition.

This language essentially mirrors that of section 627.70132, Florida Statutes (2016), which defines "supplemental claim" as

> any additional claim for recovery from the insurer for losses from the same hurricane or windstorm which the insurer has previously adjusted pursuant to the initial claim. This section does not affect any applicable limitation on civil actions provided in s.

satisfaction—common law or statutory—as a matter of law because they had the right to submit a supplemental claim for newly discovered damage, and thus they were entitled to a directed verdict and/or judgment notwithstanding the verdict on PTI's affirmative defense of accord and satisfaction. We agree.

At the time PTI sent the Lemons the check, the only damages of which the Lemons and PTI were aware were to the roof, the fence, and the ceiling of one bedroom. As such, those were the only damages adjusted by PTI at that time. Indeed, the scope of repairs document, Claim Settlement Letter, check, and check stub referenced neither the ceiling spots nor the water damage to the home office, which were the subject of the supplemental claim. PTI's check stub bore the notation: "REASON: FULL AND FINAL PAYMENT - Full & final settlement in accord w/ claim settlement"—which requires reference to the letter titled "Claim Settlement Letter" that further described the purpose of the check. The Claim Settlement Letter advised the Lemons that PTI was issuing a check for $15,286.40 and that if they

95.11 for claims, supplemental claims, or reopened claims timely filed under this section.

Although not pertinent here, we note that post-trial, the statute was amended, effective July 1, 2021, to distinguish a "supplemental claim" from a "reopened claim." § 627.70132(1) (a)-(b), Fla. Stat. (2022).

9

endorsed the check, the endorsed check "memorializes your <u>acceptance of the scope and amount of damages we previously reviewed and as reflected in the attached estimate</u>." (Emphasis added). The "scope and amount of damages we previously reviewed" was indisputably a reference to the roof, fence, and ceiling claim because no other damages had been submitted, claimed, or reviewed at that time. Thus, the "final resolution of the claim" was the final resolution of the claim for damages being adjusted at that time.

PTI's performance in delivering the check to the Lemons was no more than what it was contractually obligated to do, having chosen to pay rather than repair, and there being no challenge to the amount it tendered. In other words, PTI's payment of $15,286.40 was not a substitute for a previously agreed amount or performance. Rather, it was the performance expected by the Lemons in the first place. Because under no view could the language on the check evince an intention to settle future, unknown supplemental claims, the motion for directed verdict on the accord and satisfaction defense should have been granted as a matter of law. See <u>Luciano v. United Prop. & Cas. Ins. Co.</u>, 156 So. 3d 1108, 1110 (Fla. 4th DCA 2015) (holding, where insurer's 2006 letter indicated check was net settlement only for skylight replacement, and no check or letter indicated payment in full for, or a complete settlement of, all Hurricane Wilma claims or indicated that no

10

additional supplemental payments would be made, checks "merely evidence performance under the insurance policy and United's alleged breach did not occur until United denied the claim for roof replacement in 2010"); Rizo v. State Farm Fla. Ins. Co., 133 So. 3d 1114, 1115 (Fla. 3d DCA 2014) (observing that prior checks tendered by insurer to cover hurricane damages were not marked "in full and final payment" nor did they "anticipatorily preclude the possibility of supplemental claims or payments"); see also Roll v. Spero, 293 So. 2d 370 (Fla. 4th DCA 1974) (holding plaintiffs not precluded from recovering further amounts under contract where they had cashed a check containing the phrase "Paid in Full to date of abeyance" where invoice related to check showed check was a progress payment and no dispute existed between parties at time check was cashed).

Because the language of the check tendered in satisfaction of the original damage claim is susceptible of only one interpretation—that it was offered (and accepted) in settlement of only the damages claimed and adjusted as of that date—and there was no evidence whatsoever of the parties' intent to preclude supplemental claims, it was error to deny the Lemons' motion for directed verdict and subsequent motion for judgment notwithstanding the verdict on PTI's affirmative defense of accord and

11

satisfaction.  Accordingly, we reverse the Final Judgment and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

EVANDER and WALLIS, JJ., concur.