# First District Court of Appeal
## State of Florida

_____

No. 1D2024-1176
_____

MICHELE M. ALDRIDGE,

    Appellant,

    v.

JAYYOUS PROPERTIES, LLC,

    Appellee.

_____


On appeal from the Circuit Court for Bay County.
James J. Goodman, Judge.

July 23, 2025


PER CURIAM.

Appellant, Michele M. Aldridge, appeals a final judgment entered in favor of Appellee, Jayyous Properties, LLC (Jayyous). She argues that the trial court erroneously concluded that a Second Mortgage on her residence that she signed with her late husband Ronald Aldridge secured a loan made by Jayyous to Mr. Aldridge's business, North Lagoon Medical, LLC (North Lagoon). For the reasons that follow, we reverse the final judgment.

On June 22, 2013, North Lagoon, as the "'Borrower' and/or 'Company,'" entered into a Management Services/Loan Agreement ("Agreement") with Jayyous, the "'Lender' and/or 'Management Services Provider.'" The Agreement addresses two aspects of the parties' business relationship: (1) a $50,000 loan from Jayyous to

North Florida for startup costs and (2) the management services that Jayyous would perform for North Lagoon and the fees that Jayyous would receive for those services. Paragraph 3 of the Agreement provides in relevant part that the loan would be secured "by an assignment of all of the Company's [North Lagoon's] assets, including all leases, accounts receivable and all properties of every kind, and the personal guarantee of Ronald J. Aldridge." Paragraph 4 addresses the management services fee structure and explains that early satisfaction of the loan would not diminish or relieve North Lagoon of its obligations under the management services aspect of the Agreement. Paragraph 6 provides:

> In the event the Company [North Lagoon] shall breach this Agreement in any material respect, the result of which is to deprive Management Services Provider [Jayyous] from receiving its agreed compensation or being able to perform its obligations hereunder, in such case both the Company [North Lagoon] and its principal Ronald J. Aldridge, personally, shall be liable to Management Services Provider [Jayyous] in the amount of $150,000.00, together with all costs and reasonable attorney's fees incurred by Management Services Provider [Jayyous] in the collection and recovery of same. It is agreed that actual damages are not possible to identify with any degree of certainty and the parties agree that the sum of $150,000 in liquidated damages is fair for both parties. The personal guaranty[*] of Ronald J. Aldridge, as provided herein, shall be secured by a second mortgage on his residence located at 135 Boca Lagoon Drive, Panama City Beach . . . .

A General Security Agreement and the Second Mortgage were executed on the same day as the Agreement. The General Security Agreement, which was between North Lagoon, the "Debtor," and Jayyous, the "Secured Party," granted to Jayyous a security interest in the "Collateral," which was defined as "[a]ll assets of

---

[*] Notably, the "guaranty" included in paragraph 6 was spelled differently than the "guarantee" mentioned in paragraph 3.

2

Debtor [North Lagoon], both real and personal, fixed and contingent, including all accounts receivable, furniture, furnishing and equipment, books and records pertaining thereto, accessions and improvements, and proceeds therefrom." The collateral was to secure North Lagoon's "note of $50,000.00 to [Jayyous] of June 22, 2013, payable as to principal and interest as therein provided," "any future advances," "all expenditures by [Jayyous] for taxes, insurance, repairs to and maintenance of the Collateral, and all costs and expenses incurred by the Secured Party [Jayyous] in the Collection and enforcement of the note and other indebtedness of the Debtor [North Lagoon]," and "all liabilities of the Debtor [North Lagoon] to the Secured Party [Jayyous] now existing or hereafter incurred, matured, or unmatured, direct or contingent, and any renewals and extensions thereof . . . including all obligations under that certain Management Services/Loan Agreement of even date herewith."

The Second Mortgage, which was signed by Mrs. Aldridge and Mr. Aldridge, provided in part:

> THAT for good and valuable consideration, and also to secure the payment of the aggregate sum of money named in the Management Services-Loan Agreement of even date herewith, hereinafter mentioned, and all other sums of money secured hereby as hereinafter provided, the Mortgagor does grant, bargain, sell, alien, remise, release, convey, and confirm unto the Mortgagor, in fee simple the following described land . . . .

> Lot 50, Block A, Grand Lagoon Shores Unit Eleven . . . .

> PROVIDED ALWAYS, that if said Mortgagor shall cause the terms of the Management Services-Loan Agreement to perform and comply with each and every stipulation, agreement and covenant of said Agreement, including the terms of the personal guaranty of performance in the amount of $150,000.00, then this Mortgage and the estate hereby created shall be void, otherwise the same shall remain in full force and effect . . . .

3

Should any of the above covenants be broken, then said Agreement and all moneys secured hereby shall without demand, if the Mortgagee so elects, at once become due and payable and the Mortgage be foreclosed, and all costs and expenses of collection of said moneys by foreclosure or otherwise, including attorney's fees shall be paid to the Mortgagor, and the same are hereby secured.

**IT IS SPECIFICALLY NOTED AND RESERVED THAT [MRS. ALDRIDGE] EXECUTES THIS DOCUMENT SOLELY TO ENCUMBER HER INTEREST IN THE SUBJECT PROPERTY TO SECURE THE GUARANTY STATED HEREIN. EXCEPT FOR THE LIEN OF THIS MORTGAGE, [MRS. ALDRIDGE] ASSUMES NO PERSONAL LIABILITY FOR ANY GUARANTY.**

In Jayyous' Fourth Amended Complaint filed against Mrs. Aldridge, North Lagoon, and Regions Bank, Inc., Jayyous alleged in part that the "Debtor" [North Lagoon] had made no loan payments since September 2013 and did not pay the entire loan balance during the three-year renewal period. In Count I, Jayyous sought to foreclose on Mrs. Aldridge's property as a result. Count II sought to reestablish a lost/destroyed note, and Count III was a "breach of contract – personal guarantee" claim against Mr. Aldridge's estate.

Following a bench trial, the trial court entered a final judgment for Jayyous. The court found that the testimony established that the intention of the Second Mortgage was to protect Jayyous' collateral and that securing the loan with the Aldridges' residence was specifically contemplated by Mr. Aldridge and Jayyous when they executed the Agreement. The trial court also relied upon the "aggregate sum" language contained in the Second Mortgage, along with the "each and every stipulation" language. The trial court determined that the more likely purpose of the bolded language in the Second Mortgage was to confirm that Mrs. Aldridge was not pledging personal liability for the loan. The trial court entered judgment for Jayyous on Counts I through III

and ordered Jayyous to proceed with its foreclosure of the property. This appeal followed.

"The cardinal rule of contract interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with its plain meaning." *R.J. Reynolds Tobacco Co. v. Webb*, 187 So. 3d 388, 392 (Fla. 1st DCA 2016). "Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011). When parties execute two or more documents concurrently in the course of one transaction concerning the same subject matter, the documents should be read and construed together. *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 506 (Fla. 2d DCA 2020); *see also Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002) ("[W]e view the lease agreement, maintenance agreement, and equipment acquisition agreement as one integrated document because they were executed by the same parties at or about the same time and concern the same transaction or subject matter."). A trial court's interpretation of a contract is a matter of law that is subject to de novo review on appeal. *Webb*, 187 So. 3d at 392.

No party argued below that the documents at issue were ambiguous, and the trial court made no such finding. And thus, the trial court acknowledged that the parties' intent must be discerned from the four corners of the documents at issue. Yet, as Jayyous concedes on appeal, the trial court "strayed" from the documents' four corners and relied in part upon testimony given during the bench trial in ascertaining the parties' intent. This was error.

Reviewing the four corners of the Agreement, the General Security Agreement, and the Second Mortgage, we conclude that the Second Mortgage does not secure the loan from Jayyous to North Lagoon. Looking first at the Agreement, paragraph 3, which addresses only the loan, makes clear that the "Loan shall be secured by an assignment of all of the Company's [North Lagoon's] assets, including all leases, accounts receivable and all properties of every kind, and the personal guarantee of Ronald J. Aldridge."

5

It says nothing of a second mortgage being executed to secure Mr. Aldridge's loan "guarantee."

In line with paragraph 3, the parties executed a General Security Agreement to secure the loan by which "[a]ll assets of Debtor [North Lagoon], both real and personal, fixed and contingent, including all accounts receivable, furniture, furnishing and equipment, books and records pertaining thereto, accessions and improvements, and proceeds therefrom" were to secure "the Debtor's [North Lagoon's] note of $50,000 . . . ."

Paragraph 6 of the Agreement addresses the management services aspect of Jayyous' relationship with North Lagoon. For instance, it mentions a breach of the Agreement "in any material aspect, the result of which is to deprive Management Services Provider [Jayyous] from receiving its agreed compensation or being able to perform its obligations thereunder." The parties agreed that in the event of a breach of the management services obligations, both North Lagoon and Mr. Aldridge in his personal capacity would be liable for $150,000 in liquidated damages, and it expressly provided that "[t]he personal guaranty of Ronald J. Aldridge, as provided herein, shall be secured by a second mortgage on his residence . . . ."

In finding that the Second Mortgage secured the loan, the trial court relied upon the mortgage's language "aggregate sum of money named in the Management Services-Loan Agreement" and "each and every stipulation, agreement and covenant of said Agreement." Were we to consider that language in isolation, we might agree with the trial court's interpretation. However, when considering the interplay between the Agreement, the General Security Agreement, and the Second Mortgage, along with the express mention in the Second Mortgage of Mr. Aldridge's $150,000 guaranty and the language in bold and all capital letters that Mrs. Aldridge executed the mortgage "solely to encumber her interest in the subject property to secure the guaranty stated herein," the Second Mortgage does not act to secure Jayyous' loan to North Lagoon.

In conclusion, because Jayyous sought to foreclose on Mrs. Aldridge's property based upon North Lagoon's failure to satisfy its loan obligation, as opposed to seeking relief pursuant to Mr.

6

Aldridge's $150,000 personal guaranty, the trial court erred in granting Jayyous relief on Count I of the Fourth Amended Complaint. We, therefore, reverse the final judgment and remand.

REVERSED and REMANDED.

LEWIS, ROWE, and BILBREY, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Michael S. Burke and Gregory J. Philo of Burke Blue, Panama City Beach, for Appellant.

Stephen Syfrett of Williams & Syfrett, PLLC, Panama City, for Appellee.